OPINION OF THE COURT
 

 Bellacosa, J.
 

 The common question, with factual and legally nuanced variations among the four cases, centers on the duty of care owed by an owner or operator of an athletic facility to participants who are injured on premises while engaged in voluntary sports activities. Each case is before us by leave to appeal granted to the respective plaintiffs by this Court. We agree with the Appellate Division that the defendants in the
 
 Morgan, Beck
 
 and
 
 Chimerine
 
 cases owed the respective plaintiff athletes in those cases no duty of care, because the injured parties there assumed inherent risks as part of their particular participatory activities under their pertinent fact patterns. We thus affirm the orders in those cases. On the other hand, we reverse the order in the
 
 Siegel
 
 case because a distinctive, separate duty continues to be operative, precluding a grant of summary judgment to defendants in that case.
 

 Morgan v State of New York
 

 Claimant sustained severe physical injuries from an accident which occurred as he was driving a two-person bobsled during a national championship race at the Mt. Van Hoevenberg Bobsled Run in the Town of North Elba near Lake Placid in
 
 *480
 
 1986. Morgan was an experienced amateur bobsledder who had competed in the Olympic Games and had been bobsledding at Mt. Van Hoevenberg for over 20 years prior to the accident. Morgan and his teammate, who handled the brake, completed their first run down the course uneventfully. At the start of the second run, the bobsled tipped over due to a steering error by Morgan. As a result, the teammate fell out, leaving Morgan alone in the sled as it slid down the course on its side. Morgan managed to negotiate the course despite the sled’s instability, which was due, in part, to the loss of weight in the rear. The sled was righted by the time it crossed the finish line, but Morgan was unable to reach the brakes or otherwise slow the rate of speed. This caused the sled to ride up onto the left wall of the exit run, where it ran through a 20-foot opening in the wall and crashed into a concrete abutment at the far end of the opening.
 

 At the time of the accident, the Mt. Hoevenberg course was the only bobsled run in North America. It was originally constructed in 1932. In 1979, in preparation for the 1980 Lake Placid Olympic Games, the course was renovated. The reconstruction was overseen and approved by the Federatione Internationale de Bobsleigh et de Tobaganning (FIBT), the organization regulating the sport. The course changes included refrigeration and recasting the formerly wood and ground stone track with concrete.
 

 The exit chute of the track where Morgan’s crash occurred was also substantially modified. Prior to the reconstruction, the course was configured so that a bobsled would cross the finish line and then enter a five-foot wide chute about 80 yards in length. That began at a level area just past the finish line, which gained elevation in order to slow the sleds. The three-to-four-foot high wooden walls of the chute were continuous with no openings. Bobsleds emerged from the chute into an open snow-covered area and once stopped would be pulled onto a loading ramp, placed on a truck and taken back to the top of the run.
 

 As part of the reconstruction, a new, longer, exit chute with concrete walls was built. Past the finish line, the sleds would traverse a short, level chute, proceed up a snow-covered hill, traverse another flat- area, and then, if necessary, proceed up a second hill. On the flat stretch between the first and second upgrades, a 20-foot opening was created in the left concrete wall. Bales of hay were placed on both sides of the concrete abutments framing the opening to provide protection to any
 
 *481
 
 sled which happened to come into contact with the wall. The placement of this opening in the chute was to facilitate the rapid removal of the sleds during competition, as required by the FIBT. At the conclusion of an ordinary competitive run, a bobsled was supposed to stop by the time it reached the opening and would be removed.
 

 Morgan sued in the Court of Claims. He claimed that the negligent design of the opening in the exit ramp was the proximate cause of his injuries. Defendant State of New York owns and operates the Mt. Van Hoevenberg Run through its Department of Environmental Conservation and the Olympic Regional Development Authority. The State asserted that Morgan had assumed the risks inherent in the dangerous bobsledding sport activity and was himself the proximate cause of the accident by his mishandling of the sled.
 

 The Court of Claims, after trial, held that the State was liable for Morgan’s injuries and ordered a trial on damages (162 Misc 2d 984). The Appellate Division modified on the law and facts and dismissed the claim (229 AD2d 737). We affirm.
 

 Beck v Scimeca
 

 This plaintiff was injured in 1992 while participating in a class at defendant’s karate school. Thirty years old at the time of the accident, he had been a student at the school for approximately 15 months, attended classes two or three times a week and had achieved the level of orange belt. Beck was injured attempting to perform a "jump roll” tumbling technique over an obstacle. He had executed the tumble on prior occasions, but the obstacles had been set at a lower height than at the time of the accident and injury.
 

 The defendant instructor-owner was present when class began but he left the classroom after awhile, as was his usual practice, and placed the highest-ranking student in charge. That student, who was 15 years old, raised the height of the obstacle. When plaintiff attempted a "jump roll,” he landed awkwardly and suffered a spinal injury.
 

 Defendant moved for summary judgment to dismiss the ensuing action. Supreme Court granted the motion and the Appellate Division affirmed (229 AD2d 555). We affirm.
 

 Chimerine v World Champion John Chung Tae Kwon Do Inst.
 

 Plaintiff injured her knee in 1992 while attempting what is described as a "jumping” or "hopping” kick maneuver. The injury occurred during her fourth class at defendants’ martial arts training school. She sued. Supreme Court granted
 
 *482
 
 defendants’ motion to dismiss the complaint, and the Appellate Division affirmed (225 AD2d 323). We affirm.
 

 Siegel v City of New York
 

 This 60-year-old plaintiff was injured in 1992 when he tripped playing tennis at defendant Paerdegat Racquet Club in Brooklyn. Defendant City of New York owns the premises and leases them to Paerdegat. During a game, Siegel snagged his foot in a torn vinyl hem at the bottom of a net dividing the indoor tennis courts. He had been a member of the club for 10 years and played doubles tennis there once a week. His deposition testimony showed that he had known for over two years that the side divider net was ripped and that although he had never informed Paerdegat’s management of the problem, other club members had.
 

 Defendants moved for summary judgment. Supreme Court granted the motion and dismissed the complaint. The court held that by electing to play tennis on a court inescapably known for a long time to have a torn net, Siegel assumed a known risk that rendered his lawsuit susceptible to a defense motion for summary judgment. The Appellate Division affirmed (230 AD2d 782). We reverse.
 

 L
 

 Plaintiffs-appellants in these factually discrete cases argue that the Appellate Division misapplied the assumption of risk doctrine and diminished the duty owed by owners and operators of sports facilities to voluntary participants in athletic activities. They assert that their opportunity for recovery upon plenary trials should not be barred by the assumption doctrine because the occurrences that are the proximate causes of their injuries are not "inherent” in the relevant sporting or recreational activity. Based upon their constricted interpretation of the risks that inhere in the various activities which caused their injuries, they build a theory that the assumption of risk doctrine should no longer apply to bar recoveries as a matter of law in these cases. We reject their arguments because they do not sufficiently credit the development of the assumption of risk doctrine, as more lately applied in this Court’s precedents when injuries are suffered by voluntary participants in sporting and amusement activities.
 

 As early as 1929, Judge Cardozo framed the modern debate by articulating the pertinent tort policy and doctrine as follows: "One who takes part in such a sport accepts the dangers
 
 *483
 
 that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball. * * * A different case would be here if the
 
 dangers inherent in the sport were obscure or unobserved,
 
 or so serious as to justify the belief that precautions of some kind must have been taken to avert them”
 
 (Murphy v Steeplechase Amusement Co., 250
 
 NY 479, 482-483 [emphasis added];
 
 see, Benitez v New York City Bd. of Educ.,
 
 73 NY2d 650, 657;
 
 Akins v Glens Falls City School Dist.,
 
 53 NY2d 325, 329;
 
 see generally, 2
 
 Speiser, Krause and Gans, American Law of Torts § 9:43, at 1328). In the framework of New York’s relatively recently abandoned contributory negligence rule, the assumption of a risk by an athletic participant was a complete bar to any recovery for injuries suffered while engaging in the activity
 
 (see, Akins v Glens Falls City School Dist., supra,
 
 53 NY2d, at 329).
 

 Modern developments require a reexamination of the fit, continued viability and application of the assumption doctrine as affected by the State’s adoption of a comparative negligence equation (CPLR 1411). Appellants argue that assumption of risk is no longer an absolute defense to their claims of negligence. They rely extensively on the abstracted statement in
 
 Arbegast v Board of Educ. (65
 
 NY2d 161) that "CPLR 1411 requires diminishment of damages in the case of an implied assumption of risk but * * * does not foreclose a complete defense that by express consent of the injured party no duty exists and, therefore, no recovery may be had”
 
 (id.,
 
 at 170). Plaintiffs assert that any assumption of risks by them in the respective appeals now before us was implied only, and not express, and, as a result,
 
 Arbegast
 
 does not block, but rather buttresses, their chances at the summary judgment matter-of-law stages of their lawsuits. Their proffered legal refinement and distinction, however, lack an analytical or principled basis in the precedents and principles applicable to this tort field and fail to appreciate the contextual meaning and effect of
 
 Arbegast
 
 on these cases
 
 (compare, Turcotte v Fell,
 
 68 NY2d 432).
 

 In
 
 Maddox v City of New York
 
 (66 NY2d 270), a professional baseball player sued to recover for injuries suffered in a fall during a night game played on a wet and muddy field
 
 (id.,
 
 at 274). This Court upheld summary judgment in favor of the defendants in that pre-CPLR 1411 case. In a key precedential development after the enactment of CPLR 1411,
 
 Turcotte v Fell
 
 (68 NY2d 432,
 
 supra),
 
 the Court elaborated that "assumption of risk is not an absolute defense but a
 
 measure of the
 
 
 *484
 

 defendant’s duty of care and thus survives the enactment of the comparative fault
 
 statute” (68 NY2d,
 
 supra,
 
 at 439 [emphasis added]).
 

 Relieving an owner or operator of a sporting venue from liability for inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks
 
 (id.,
 
 at 437;
 
 see,
 
 Prosser and Keeton, Torts § 68, at 486-487 [5th ed];
 
 McEvoy v City of New York,
 
 292 NY 654,
 
 affg
 
 266 App Div 445; Restatement [Second] of Torts § 50, comment
 
 b).
 
 Thus, to be sure, a premises owner continues to owe "a duty to exercise care to make the conditions as safe as they appear to be. If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty”
 
 (Turcotte v Fell, supra,
 
 68 NY2d, at 439;
 
 see also,
 
 Prosser and Keeton; Torts § 68, at 485-486 [5th ed]). The balance struck at the threshold duty stage of responsibility and adjudication is that the tort rules support a social policy to "facilitate free and vigorous participation in athletic activities”
 
 (Benitez v New York City Bd. of Educ.,
 
 73 NY2d 650, 657,
 
 supra).
 

 It is also important to appreciate that, by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation. Thus, the risks of becoming injured due to fatigue
 
 (Benitez v New York City Bd. of Educ., supra,
 
 73 NY2d, at 659), being bumped by a horse during a race or exhibition
 
 (Turcotte v Fell,
 
 68 NY2d 432, 440-441,
 
 supra; Rubenstein v Woodstock Riding Club,
 
 208 AD2d 1160;
 
 see also, Arbegast v Board of Educ.,
 
 65 NY2d 161,
 
 supra),
 
 or being struck by a ball or bat during a baseball game
 
 (Checchi v Socorro,
 
 169 AD2d 807;
 
 Cuesta v Immaculate Conception R. C. Church,
 
 168 AD2d 411;
 
 McGee v Board of Educ.,
 
 16 AD2d 99, 101-102,
 
 Iv denied
 
 13 NY2d 596) are risks which various participants are legally deemed to have accepted personal responsibility for because they commonly inhere in the nature of those activities
 
 (see,
 
 Annotation,
 
 Liability for Injury to or Death of Participant in Game or Contest,
 
 7 ALR2d 704, 707, § 3).
 

 Correspondingly, for purposes of determining the extent of the threshold duty of care, knowledge plays a role but inherency is the sine qua non
 
 (see, e.g., Maddox v City of New York,
 
 66 NY2d 270,
 
 supra; Turcotte v Fell,
 
 68 NY2d 432, 443,
 
 supra; Scaduto v State of New York,
 
 56 NY2d 762,
 
 affg
 
 86 AD2d 682).
 

 
 *485
 
 Plaintiffs’ arguments that the assumption of risk doctrine should not bar their claims at the summary judgment matter-of-law litigation threshold because of the enactment of comparative negligence principles (CPLR 1411) overlooks a key feature: assumption of risk, in the context of the risks inherent in the activities these plaintiffs engaged in, of course, is no longer treated as a defense to the abandoned contributory negligence equation. Nevertheless, it still helps and serves to define the standard of care under which a defendant’s duty is defined and circumscribed "because assumption of risk in this form is really a
 
 principle of no duty,
 
 or no negligence and so
 
 denies the existence of any underlying cause of action.
 
 Without a breach of duty by the defendant, there is thus logically nothing to compare with any misconduct of the plaintiff” (Prosser and Keeton, Torts § 68, at 496-497 [5th ed] [emphasis added]). "Accordingly, the analysis of care owed to plaintiff in the * * * sporting event by a coparticipant and by the proprietor of the facility in which it takes place must be evaluated by considering the risks plaintiff assumed when he elected to participate in the event and how those assumed risks qualified defendants’ duty to him”
 
 (Turcotte v Fell,
 
 68 NY2d 432, 438,
 
 supra).
 
 This is particularly pertinent in the
 
 Beck, Chimerine
 
 and
 
 Morgan
 
 cases, though as we shall see, an important nuance may distinguish the
 
 Siegel
 
 analysis as it does its disposition.
 

 Another important counterweight to an undue interposition of the assumption of risk doctrine is that participants will not be deemed to have assumed the risks of reckless or intentional conduct
 
 (id.,
 
 at 439;
 
 McGee v Board of Educ.,
 
 16 AD2d 99, 101-102,
 
 supra)
 
 or concealed or unreasonably increased risks
 
 (Benitez v New York City Bd. of Educ.,
 
 73 NY2d 650, 658,
 
 supra).
 

 Therefore, in assessing whether a defendant has violated a duty of care within the genre of tort-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants’ negligence are "unique and created a dangerous condition over and above the usual dangers that are inherent in the sport”
 
 (Owen v R.J.S. Safety Equip.,
 
 79 NY2d 967, 970;
 
 Cole v New York Racing Assn.,
 
 24 AD2d 993,
 
 affd no opn
 
 17 NY2d 761). A "showing [of] some negligent act or inaction, referenced to the applicable duty of care owed to him by [the] defendants, which may be said to constitute 'a substantial cause of the events which produced the injury’ ” is necessary
 
 (Benitez v New York City Bd. of Educ.,
 
 73 NY2d 650, 659,
 
 supra
 
 [citations omitted]). Additionally, the application of the assumption of risk doctrine
 
 *486
 
 in assessing the duty of care owed by an owner or operator of a sporting facility requires that the participant have "not only knowledge of the injury-causing defect but also appreciation of the resultant risk, but awareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff”
 
 (Maddox v City of New York,
 
 66 NY2d 270, 278,
 
 supra
 
 [citations omitted];
 
 Turcotte v Fell,
 
 68 NY2d 432, 440,
 
 supra; Benitez v New York City Bd. of Educ.,
 
 73 NY2d 650, 657-658,
 
 supra).
 

 IL
 

 Applying these measured rubrics to the cases at hand, we hold that defendants, except in the
 
 Siegel
 
 case, are entitled to summary judgment or matter-of-law dispositions on the ground that they were not shown on these records to owe plaintiffs a cognizable duty of care because plaintiffs personally assumed sufficiently inherent risks.
 

 In
 
 Morgan v State of New York,
 
 the bobsledder’s claim was properly dismissed on assumption of risk grounds. Claimant testified that not only had he participated in the sport for over 20 years prior to the accident, but that he was thoroughly familiar with the bobsled course, having raced on it many times in practice runs and in national and international competitions. Further, there was no evidence that the opening in the wall in the course finish run engendered additional or heightened risks beyond those inherent in a sport whose aim is to streak down a mountainside on a sheet of ice at speeds approaching 80 miles per hour. The accident in this case was solely the result of dangers and calculations inherent in a highly dangerous sport and not the result of any demonstrable defect in the design of the bobsled course itself
 
 (contrast, Ross v State of New York,
 
 283 App Div 834). While testimony showed that a slanted wing wall could have been installed at the exit chute opening, evidence also showed that installing a gate or angled wall might have been even more dangerous to the competitors than the operational configuration. Relevantly, FIBT, the world body overseeing this sport, with unique expertise in the design of and precautions necessary for such facilities, approved the renovations and determined that without the ability to quickly remove sleds from the course, competition would not be possible at all or would have created greater dangers of sleds colliding with each other at the end of the course.
 

 The injured plaintiff in
 
 Beck v Scimeca
 
 asserts that defendants were negligent in supervising the martial arts class dur
 
 *487
 
 ing which his injuries occurred and were further negligent in failing to provide properly secured mats of sufficient thickness to cushion his fall during his attempted maneuver. First, plaintiffs never claimed in their complaint or bill of particulars that the condition or placement of the mats caused or contributed to the accident and no evidence was introduced to support such an assertion. Therefore, that argument cannot constitute a basis upon which we could review whether summary judgment could be denied to the defendants.
 

 In support of his negligent supervision claim, however, Beck adverts to the circumstance that a teenage student was left in charge of the class as sufficient to raise a question of fact, precluding summary judgment. This argument lacks merit. The mere allegation that a student of superior skill is placed temporarily in charge of a martial arts class performing routine exercises does not, standing alone, constitute a sufficient basis to warrant a trial on negligence
 
 (see, Klocek v Young Men’s Christian Assn.,
 
 48 Wis 2d 43, 179 NW2d 835). The plaintiffs, moreover, contradictorily assert that the student instructor was too young and inexperienced to oversee the class, yet possessed sufficient maturity and control over the class to "compel” the plaintiff to perform the maneuver.
 

 Also misplaced is Beck’s reliance upon cases involving injuries resulting from sparring or other contact training
 
 (Deangelis v Izzo,
 
 192 AD2d 823;
 
 Dowdy v New York Health & Racquet Club,
 
 223 AD2d 382). He was not engaged in any such activity when the injury occurred. Instead, plaintiff was simply attempting to vault or "jump roll” over an obstacle, an activity which it was conceded he had performed on numerous prior occasions albeit at a lower height. On this record, it is indisputable that the 30-year-old plaintiff assumed the risk of landing incorrectly when tumbling in the manner he had been trained to do during his over 15-month-long attendance at the school. The fact that the barrier was set at a higher level, a circumstance of which the plaintiff was plainly aware, does not raise an issue of fact.
 

 The primary means of improving one’s sporting prowess and the inherent motivation behind participation in sports is to improve one’s skills by undertaking and overcoming new challenges and obstacles. Judge Cardozo aptly characterized the standard of legal measurement: "The plaintiff was not seeking a retreat for meditation. * * * He took the chance of a like fate, with whatever damage to his body might ensue from such a fall. The timorous may stay at home”
 
 (Murphy v Steeplechase Amusement Co.,
 
 250 NY 479, 483,
 
 supra).
 

 
 *488
 
 In
 
 Chimerine v World Champion,
 
 we also reject plaintiffs argument that disputed factual issues preclude summary judgment for defendants on assumption of risk grounds. Plaintiff claims that at the time of her accident she did not understand the risks inherent in martial arts training because she had only taken three classes prior to the class when she was injured. Plaintiff’s own deposition testimony was that the instructor directed that she "step, hop, skip, jump, kick, land” and she attempted this maneuver after seeing it performed by the instructor and a few classmates. A reasonable person of participatory age or experience must be expected to know that there is a risk of losing one’s balance and of injury when hopping, skipping or jumping in such circumstances. Because of the absence of any record material that the elemental maneuver plaintiff attempted to execute was so unreasonably risky that plaintiff would not have realized that there was a risk of injury, the grant of summary judgment dismissing the complaint by the courts below should not be disturbed.
 

 Lastly, in
 
 Siegel v City of New York,
 
 the plaintiffs assert that the torn net separating the tennis courts was not "inherent” in the sport and therefore a player should not be deemed to have assumed the risk of such a tripping accident during a tennis match. The line to be drawn and applied in this case is close, but plaintiffs have the better of it. It cannot reasonably be disputed that nets separating indoor tennis courts, such as the one at issue here, are inherently part of the playing and participation of the sport at such facilities. In such circumstance, they prevent interference from bouncing balls and trafficking players on adjacent courts. But a torn or allegedly damaged or dangerous net — or other safety feature — is by its nature not automatically an inherent risk of a sport as a matter of law for summary judgment purposes. Rather, it may qualify as and constitute an allegedly negligent condition occurring in the ordinary course of any property’s maintenance and may implicate typical comparative negligence principles.
 

 Thus, the issue boils down to whether defendants here had a continuing duty to players to keep the net in good repair. We hold that they may in these circumstances and as to plaintiff Siegel, because a torn net is not sufficiently interwoven into the assumed inherent risk category.
 

 We agree with Siegel’s argument that because a torn net is not an "inherent” part of the game of tennis in and of itself, he should not be deemed legally to have assumed the risk of injuries caused by his tripping over it. Our precedents do not
 
 *489
 
 go so far as to exculpate sporting facility owners of this ordinary type of alleged negligence.
 

 Accordingly, in
 
 Morgan, Beck
 
 and
 
 Chimerine,
 
 the orders of the Appellate Division should be affirmed, with costs; in
 
 Siegel,
 
 the order of the Appellate Division should be reversed, with costs, and the defendants’ motion for summary judgment should be denied.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 In
 
 Morgan v State of New York, Beck v Scimeca
 
 and
 
 Chimerine v World Champion John Chung Tae Kwon Do
 
 Inst.: Order affirmed, with costs.
 

 In
 
 Siegel v City of New York:
 
 Order reversed, with costs, and defendants’ motion for summary judgment denied.