[952 NYS2d 568]

ANTHONY MUSSARA, et al., Appellants, v MEGA FUNWORKS, INC., Doing Business as SPLASHDOWN PARK, Respondent, et al., Defendants.

Second Department, October 10, 2012

## APPEARANCES OF COUNSEL

*Vergilis, Stenger, Roberts, Davis & Diamond, LLP*, Wappingers Falls (*Lisa M. Cobb* of counsel), for appellants.

*Roemer Wallens Gold & Mineaux, LLP*, Albany (*Matthew J. Kelly* of counsel), for respondent.

## OPINION OF THE COURT

HALL, J.

Anthony Mussara (hereinafter the injured plaintiff) sustained injuries while participating in the summertime, recreational activity of riding down a water slide. On this appeal we consider, inter alia, whether the injured plaintiff assumed the risk of his injuries by voluntarily riding down the water slide, and whether the injured plaintiff's weight, which was in excess of the weight limitation imposed for the water slide, and his failure to pull

back on certain handles while exiting the water slide, were the only proximate causes of his injuries.

### Factual and Procedural Background

The defendant Mega Funworks, Inc., doing business as Splashdown Park (hereinafter Splashdown), is a water park located in Fishkill, New York. In 2007 Splashdown installed a new ride called "Pirate's Plunge." Splashdown anticipated that the ride would open on the July 4th weekend. Pirate's Plunge consisted of two slides, a "drop" slide and a "serpentine" slide. Each slide involved riding down a water slide on an inflated inner tube that would exit into a 50-foot-long "splash pool." The slides were designed and manufactured by the defendants Proslide Technology, Inc., and Proslide Development Corporation (hereinafter together Proslide). The splash pool was designed by the defendant Northeast Aquatic Design and Supply, Inc. (hereinafter Northeast Aquatic).

After the construction of Pirate's Plunge was complete, but prior to its opening to the public, Splashdown performed tests of the ride. There were approximately 40 to 50 test rides of the drop slide performed by Splashdown lifeguards. The lifeguards ranged in weight from 105 pounds to 280 pounds. Less than 10 times during the testing, after exiting the slide, the rider traveled across the entire length of the splash pool and struck the stairs on the other side of the pool. The riders who traveled across the splash pool to the stairs were of different heights and weights. One rider who traveled across to the stairs weighed approximately 160 pounds.

As a result of the testing, Splashdown decided to instruct riders to sit all the way down into the tube, to hold the handles for the length of the ride, and, once they hit the pool, to pull on the handles and lean back to slow down. Splashdown also consulted Proslide and Northeast Aquatic to see what changes could be made to prevent riders from traveling too far across the splash pool. Stephen Turk, president and majority owner of Splashdown, and Robert LaColla, project manager for the Pirate's Plunge construction, testified at their depositions that, as a result of recommendations made by Proslide and Northeast Aquatic, Splashdown made changes to the water level in the pool and the water flow rate in the slides. LaColla testified that Splashdown increased the water level in the splash pool so that more water was pooled at the end of the slide, which would have the effect of decreasing the speed of the rider. In addition,

LaColla testified that the flow rate of the slides was increased by fully opening the valves. By increasing the flow rate, the water would accumulate in front of the rider, creating a "plow effect" that would decrease the speed of the rider. Michael Mandia, Splashdown's operations director, testified that the flow rate was determined by the valve setting on certain pumps, and once Splashdown determined the valve setting they wanted based on the recommendations from Proslide, a valve lock was set.

There were inconsistencies in the testimony of witnesses as to whether a rider's weight was a factor that contributed to the distance a rider traveled across the splash pool. Mandia testified at his deposition that the weight of the rider had an effect on the distance the rider traveled across the splash pool. Andreas Tanzer, director of innovation research standards at Proslide, testified at his deposition that a person's weight and how a person sits in the tube are factors that influence the speed and distance a person travels across the splash pool. He testified that a lighter person might skim across the top of the water and therefore could travel farther across the pool than a heavier person. He also testified that a heavier person who cannot fit properly into the hole of the tube would travel faster and farther across the pool because there would be less friction slowing down the tube.

In contrast, Winthrop Knox, vice-president of Northeast Aquatic, testified at his deposition that the injured plaintiff's weight had nothing to do with the happening of the accident because the pool was designed to accommodate people who weighed more than the plaintiff, and that a rider's weight was not a relevant factor in determining whether the rider would travel across the splash pool and hit the other end of the pool. Rather, Knox maintained that the relevant factors were the size of the tube, the water level in the pool, and the flow rate in the slides. Splashdown was also advised by Proslide that bigger tubes with a 16-inch inner hole diameter should be used. The rationale was that a tube with a larger inner circle would allow the rider's body to drag deeper in the water and reduce buoyancy, so that the rider would sink into the water as soon as he or she landed into the splash pool.

Splashdown employees LaColla, Mandia, and Shamien Jansen, the aquatics manager of Splashdown, testified that after changes were made to Pirate's Plunge, the ride was retested. Proslide and Northeast Aquatic also recommended that Splashdown

install water injectors at the base of the slide, which would add more water to the bottom of the slide to decrease the speed of the rider. However, Splashdown determined that there was no need to install water injectors because the other changes that were made fixed the problem.

Splashdown instituted a 200-pound weight limit and decided to instruct riders to pull back on the handles once they entered the splash pool to decrease their speed. The 200-pound weight limitation, a height restriction, and the instruction to pull back on the handles were placed on several warning signs to the ride.

On July 11, 2007, the injured plaintiff went to Splashdown with his son and wife for the first time. After spending a few hours at other rides and attractions, the injured plaintiff and his son decided to ride on Pirate's Plunge. The injured plaintiff checked the warning sign to see if his son was tall enough to qualify for the ride, but did not read the rest of the warnings.

There were four lifeguards assigned to Pirate's Plunge, two at the top, and two at the bottom, one in each location for the drop slide and the serpentine slide. The lifeguard at the top was supposed to make sure the rider was sitting in the tube correctly, holding the handles, and was supposed to tell the rider to hold the handles and to pull back on them when entering the splash pool to slow down. The two lifeguards at the bottom stood in the splash pool to help riders slow down if they were going too fast and to help riders get out of the tubes.

The injured plaintiff, who weighed in excess of the 200-pound limitation, rode the drop slide. As the injured plaintiff exited the base of the slide leading into the splash pool, his tube traveled at a high rate of speed across the splash pool, hit the stairs at the other end of the pool, and he was ejected from his tube onto the concrete ground surrounding the pool, sustaining injuries. At his deposition, the injured plaintiff stated that he was pulling back on the handles when he entered the splash pool, but he did not remember if it slowed him down. The lifeguard in the splash pool testified at his deposition that, as he saw the injured plaintiff riding down the slide, he did not believe that he could stop him and did not try to do so.

The injured plaintiff, and his wife suing derivatively (hereinafter together the plaintiffs), commenced this action against Splashdown, Proslide, and Northeast Aquatic to recover damages for personal injuries. The complaint asserted several causes of action against Splashdown, sounding in negligence, strict products liability, breach of warranty, failure to warn, breach of

express warranty, and breach of implied warranty. The plaintiffs discontinued the action insofar as asserted against Proslide and Northeast Aquatic. Splashdown moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against it. The Supreme Court, inter alia, granted that branch of Splashdown's motion which was for summary judgment dismissing the complaint insofar as asserted against it. The plaintiffs appeal, and we modify.

## Discussion

■■ The Supreme Court properly granted those branches of Splashdown's motion which were for summary judgment dismissing the sixth, tenth, thirteenth, and sixteenth causes of action insofar as asserted against it. Splashdown met its prima facie burden of establishing its entitlement to judgment as a matter of law on these causes of action, which were based on breach of express and implied warranty, strict products liability, and negligence for failure to warn. Since Splashdown had no role in the manufacture, sale, or distribution of the injury-producing product, it cannot be held liable for breach of express or implied warranty, or strict products liability (see *Passaretti v Aurora Pump Co.*, 201 AD2d 475 [1994]; see also *Spallholtz v Hampton C.F. Corp.*, 294 AD2d 424 [2002]). Insofar as the tenth cause of action alleged negligence based upon a failure to warn, any failure to warn was not a proximate cause of the alleged injuries, as the injured plaintiff admitted that he read the height restriction on the warning sign but failed to read the rest of the warnings (see *Fernandes v Lawrence*, 10 AD3d 382, 384 [2004]). In opposition, the plaintiffs failed to raise a triable issue of fact as to these causes of action.

■ However, the Supreme Court erred in granting those branches of Splashdown's motion which were for summary judgment dismissing the first and nineteenth causes of action, which alleged negligence and, derivatively, loss of consortium, insofar as asserted against it. Contrary to Splashdown's contention, the injured plaintiff did not assume the risk of his injury. The doctrine of assumption of risk is based on the principle that athletic and recreational activities possess enormous social value, even though they involve significantly heightened risks (see *Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010]). Thus, the doctrine of assumption of risk provides that " '[a] plaintiff is barred from recovery for injuries which occur during voluntary sporting or recreational activities if it is determined that

he or she assumed the risk as a matter of law' " (*Reidy v Raman*, 85 AD3d 892, 892 [2011], quoting *Leslie v Splish Splash at Adventureland*, 1 AD3d 320, 321 [2003]; *see Morgan v State of New York*, 90 NY2d 471 [1997]). By voluntarily engaging in a sport or recreational activity, a participant assumes, or consents to, the commonly-appreciated risks that are inherent in and arise out of the activity generally, and which flow from the participation (*see Morgan v State of New York*, 90 NY2d at 484; *Reidy v Raman*, 85 AD3d at 892). However, participants are not deemed to have assumed the risks of reckless or intentional conduct, or concealed or unreasonably increased risks (*see Joseph v New York Racing Assn.*, 28 AD3d 105, 108 [2006]). Furthermore, in *Morgan*, the Court of Appeals held that a participant will not be deemed to have assumed the risk of a unique and dangerous condition over and above the usual dangers that are inherent in the activity or sport (*see Morgan v State of New York*, 90 NY2d at 485).

Here, the injured plaintiff was engaged in the recreational activity of riding down a water slide. The injured plaintiff, however, was not injured by coming into contact with the interior of the slide (*cf. Leslie v Splish Splash at Adventureland*, 1 AD3d 320 [2003]). Further, he did not collide into another rider and was not injured by hitting a barrier clearly placed to keep riders from going too far in the splash pool. Rather, the injured plaintiff was injured when, after exiting the drop slide, his tube traveled across the entire length of the 50-foot splash pool and he collided with the stairs at the other end of the pool, which propelled him from his tube and caused him to land on the cement ground surrounding the pool. On this record, we cannot conclude that the injured plaintiff had "an appreciation of the nature of the risks" presented (*Morgan v State of New York*, 90 NY2d at 484), and was "aware of the risk[ ]" (*id.*) that the 50-foot splash pool would be inadequate to bring him to a safe halt upon his exit from the slide. This is not a situation where the water slide and splash pool functioned in the way they were intended to function, but an injury nonetheless occurred. Instead, Pirate's Plunge did not function as it was intended. The dangerous condition posed by the ride was unique and over and above the usual dangers that are inherent in riding down a water slide (*see Owen v R.J.S. Safety Equip.*, 79 NY2d 967, 969-970 [1992]; *cf. Reidy v Raman*, 85 AD3d at 892-893; *Leslie v Splish Splash at Adventureland*, 1 AD3d 320 [2003]). Under these circumstances, the risks to which the injured

plaintiff was exposed were not "fully comprehended or perfectly obvious" (*Turcotte v Fell*, 68 NY2d 432, 439 [1986]) and, thus, the injured plaintiff did not assume the risk of his injuries.

Furthermore, there are triable issues of fact as to whether Splashdown was negligent. Splashdown, as the proponent of a motion for summary judgment, had the prima facie burden of establishing its entitlement to judgment as a matter of law by tendering sufficient evidence to demonstrate the absence of any material issues of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The evidence submitted by Splashdown revealed triable issues of fact as to when the changes following the initial testing of Pirate's Plunge were implemented, and when and to what extent the ride was tested subsequent to the changes to ensure that the issue of impacting the stairs on the other side of the splash pool was resolved.

It is undisputed that the use of tubes with a 16-inch inner hole diameter was necessary for the safe operation of Pirate's Plunge. Mandia testified at his deposition that samples of new 16-inch inner hole diameter tubes were mailed overnight to Splashdown and were tested by Splashdown. He stated that after 100 or so test rides, none of the Splashdown lifeguards traveled to the other end of the splash pool using the new tubes. Mandia also testified that he ordered as many of the new tubes as were in stock, and that 40-50 tubes were delivered to Splashdown. In addition, Mandia maintained that only the new tubes were used on Pirate's Plunge once it was opened to the public. While this evidence was sufficient to demonstrate, prima facie, that the recommended 16-inch tubes were in use at the time of the injured plaintiff's accident, the plaintiffs raised a triable issue of fact in response. The plaintiffs submitted a Federal Express receipt, with a corresponding invoice, which showed that only one of the new 16-inch inner hole diameter tubes was delivered to Splashdown on July 9, 2007, two days before the injured plaintiff's accident. Thus, there is a triable issue of fact as to whether the proper size inner tubes were in use at the time of the accident.

It is also undisputed that the proper water level of the splash pool and the proper setting of the water flow of the slides were necessary for the safe operation of the ride. However, Splashdown failed to establish, prima facie, that the flow rate and the water level were proper when the injured plaintiff went on the ride. There was no evidence presented that the water level of

the splash pool and water flow level of the drop slide were checked on the day of the accident, and that they were at the proper levels on the day of the accident. In addition, Splashdown failed to present sufficient evidence to establish, prima facie, that Pirate's Plunge was tested and determined to be safe after the water level, water flow, and tubes were changed in accordance with the recommendations of Proslide and Northeast Aquatic.

■ Contrary to Splashdown's contention, it failed to establish, as a matter of law, that the injured plaintiff's weight and his failure to pull back on the handles were the only proximate causes of his injuries. Splashdown's argument in this regard would, perhaps, have some validity if the record was clear that, at the time of the accident, (1) the proper tubes were in place, (2) the water level of the splash pool was at the proper level, (3) the water flow in the drop slide was at its proper level, and (4) that sufficient tests were done after all these changes were made and that such tests established that the Pirate's Plunge ride was safe. However, the record contains triable issues of fact as to all of these points. Indeed, the evidence presented by Splashdown reveals a triable issue of fact as to whether the injured plaintiff's weight was even a cause of his accident, let alone the sole proximate cause. Furthermore, the evidence presented by Splashdown contains a triable issue of fact as to whether the injured plaintiff pulled back on the handles as he entered the splash pool, and includes differing views as to whether the act of pulling back on the handles of the tube would even have the effect of decreasing a rider's speed.

Under these circumstances, the order is modified, on the law, by deleting the provision thereof granting those branches of the motion of the defendant Mega Funworks, Inc., doing business as Splashdown Park, which were for summary judgment dismissing the first and nineteenth causes of action insofar as asserted against it, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from.

Angiolillo, J.P., Dickerson and Belen, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof granting those branches of the motion of the defendant Mega Funworks, Inc., doing business as Splashdown Park, which were for summary judgment dismissing the first and nineteenth causes of action insofar as asserted against it, and substituting therefor a provision denying those branches of

the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiffs.