■ ALAN ZELKOWITZ et al., Appellants, v COUNTRY GROUP, INC., Defendant, and JOSEPH SKOLER, Respondent. [36 NYS3d 32]—

Order, Supreme Court, New York County (Paul Wooten, J.), entered April 15, 2015, which, insofar as appealed from as limited by the briefs, granted defendant Joseph Skoler's motion for summary judgment dismissing the complaint as against him, reversed, on the law, without costs, and the motion denied.

Plaintiff Alan Zelkowitz, an adult, was injured while riding a zip line that he had helped defendant Joseph Skoler, his cousin, erect on property leased by Skoler. Skoler conceived of the idea of assembling a zip line and, although he had no formal training in physics or engineering, erected it himself. Plaintiff's assistance was limited to carrying hardware to the site and handing Skoler tools. Skoler purchased most of the equipment from an online purveyor of zip line parts and accessories, and he learned how to install the equipment by printing out various instruction manuals and guides from the websites of that purveyor and other online resources and by watching web videos. Skoler used those resources to learn the specific slope and grade to be employed in setting up the zip line, although he could not recall at his deposition the recommended specifications.

The zip line cable Skoler installed was 220 feet long. He installed it between two trees, and attached a seat to the cable, using a rope and "trolley mechanism" that ran along the cable. Skoler intended at some point to introduce a safety harness instead of a seat, which would prevent riders from falling off. The cable was affixed so that a rider would be three feet off the ground at its midsection, but 12 feet off the ground at each end. The system employed what Skoler described as the "best" brake mechanism available, which consisted of a "black box" positioned on the cable between the midpoint and the end point. A bungee cord was linked from the black box to a third tree, so that when a rider's support line (tethered to the main cable) made contact with the black box, the black box would begin to slow the rider down as the bungee cord became stretched and taut.

Skoler tested the zip line the day he installed it by using a big log as a dummy. He considered the test successful. Skoler and plaintiff then each took a turn riding the zip line, starting 13 to 15 feet away from where the cable was attached to the first tree. It was plaintiff's first time ever riding on a zip line. Neither Skoler nor plaintiff experienced any problems with it. Skoler and plaintiff visited the site of the zip line again approximately one month later. In the interim, a handyman hired by Skoler had built a 12-foot-high access platform at the start of the zip line. Skoler took the first ride that day. As he jumped off the platform, plaintiff held a cord that was attached to the seat for the first 20 to 30 feet of Skoler's ride, and then let go. Skoler had a smooth, problem-free ride. Skoler admitted at his deposition that he had reviewed material in preparing to install the zip line that called for multiple speed test runs, whereby someone would run alongside a zip line rider and, using a rope attached to the trolley on the zip line cable, control the rider's speed until it was determined that the bungee cord on the black box would not stretch more than 175% of its resting length. However, he admitted that he had never conducted any such test runs.

After Skoler finished his ride, plaintiff took a turn on the zip line, although Skoler did not hold him back for the first 30 feet as he had done for Skoler. Plaintiff jumped from the platform when Skoler directed him to do so, and believed he was possibly going faster than he should have been. When he reached the point where the braking mechanism was situated, however, he began to get nervous, because he felt he was not slowing down the way Skoler had, or the way he had during the first test ride one month earlier. Fearing that he might strike his

head against a tree, plaintiff put his feet out in front of him. He did not release the rope connecting the seat to the zip line, but rather held onto it until he hit the tree. When his feet made contact with the tree, plaintiff was thrown backwards, off the seat and onto a boulder on the ground, injuring his back. He commenced this negligence action against Skoler and the property owner.

Skoler moved for summary judgment dismissing the complaint as against him on the ground that plaintiff had knowingly assumed the risks of the zip line activity, and that, rather than the zip line having been negligently constructed, plaintiff panicked and let go of the rope connecting the seat to the cable before the brake could engage. Plaintiff argued in opposition that Skoler had negligently installed and adjusted the zip line, inter alia, ignoring the need to consider the appropriate slope of the cable. In support, he submitted an affidavit by Michael Reddish, a self-styled "expert in the zip line, ropes course, and adventure parks industry." Reddish averred that two years after the accident, he inspected the zip line, which was still intact. He found "a number of defects, deficiencies and violations of accepted standards and principles that govern the design and construction of ziplines." For instance, the 12% slope was not at a grade consistent with "[a]pplicable standards" or by the installation documents used by Skoler. Rather, it should have been a 6% to 8% grade. Reddish stated that the first rides taken by the men after they installed the zip line were uneventful because they started at a point on the cable line where the cable slope was an acceptable 7.8%, rather than at the tree, because the platform had not yet been built. He further opined that Skoler failed to properly install and test the brake system, inasmuch as he did not abide by the written instructions calling for several test runs with only incremental increases in a rider's speed, to make sure that the bungee cord was not stretched to more than 175% of its original length.

The court granted Skoler's motion. It found that Skoler established prima facie his entitlement to summary judgment based on a lack of evidence that the zip line was negligently constructed, and by demonstrating that plaintiff assumed the risk by voluntarily riding the zip line, notwithstanding that he knew it was not professionally erected. The court emphasized Skoler's testimony that he had researched zip line companies, felt competent to erect the zip line system, and successfully tested the system with a log as a dummy rider. It further found that plaintiff failed to raise an issue of fact, since Reddish's expert opinion offered "no more than suggested recommenda-

tions," rather than identifying mandatory guidelines or standards that were violated. The court found that the expert was too vague in asserting that the cable's slope "greatly exceeded the maximum recommended." Additionally, the court found that the expert's opinion was conclusory in asserting that the brake system was improperly installed and tested. The court acknowledged a discrepancy in the testimony that made it difficult to tell whether plaintiff fell because he panicked or because the brake did not fully engage. Nevertheless, it found that the discrepancy was immaterial, because the assumption of risk doctrine applies as long as the plaintiff was aware of the potential for injury.

A participant in an athletic or recreational activity assumes known risks and relieves the defendant of any duty to safeguard him from those risks (*see Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010]). However, a participant only consents to "those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]). Whether the plaintiff was aware of the risk is key to determining if he assumed it, and this can only be "assessed against the background of the skill and experience of the particular plaintiff" (*Maddox v City of New York*, 66 NY2d 270, 278 [1985]). Further, sporting participants "will not be deemed to have assumed . . . concealed or unreasonably increased risks" (*Morgan*, 90 NY2d at 485).

Plaintiff concedes that, had he merely lost his grip and fallen off the seat while riding the zip line, he would be barred from recovery because that is an inherent risk of zip-lining. However, his claim is not that he fell victim to such a common hazard. Rather, it is that the zip line was negligently constructed by defendant and that he had no way of knowing that. A person cannot be said to have assumed the risk of being injured by faulty equipment when he was unaware that the equipment was faulty (*see Weinberger v Solomon Schechter Sch. of Westchester*, 102 AD3d 675, 678-679 [2d Dept 2013] [high school pitcher did not assume risk of being hit in the face while pitching behind a screen that fell down because of a defect]; *Furnari v City of New York*, 89 AD3d 605, 606-607 [1st Dept 2011] [finding issues of fact as to assumption of risk where softball player was not injured running after a ball but rather by a defective condition in the surface of the asphalt]; *Harting v Community Refm. Church of Colonie*, 198 AD2d 621, 622 [3d Dept 1993] [finding factual question whether plaintiff assumed risk that a worn batting "doughnut" would fly off the bat of an on-deck

batter and strike him and noting that "(g)enerally, a sports participant does not assume the risk of faulty equipment unless he or she knows of the defective condition and uses the equipment anyway"]).

The record is replete with facts that prevent us from determining, as a matter of law, that any risk encountered by plaintiff was inherent in zip-lining and not enhanced by Skoler's negligence, or that it was, or should have been, obvious to plaintiff. Even in granting the motion, the motion court conceded that there was evidence that the brake malfunctioned. Indeed, plaintiff testified that he failed to slow down as Skoler had done only moments before, even though his ride was not otherwise any different from Skoler's. Thus, we can assume for purposes of this motion that the brake failed, regardless of the probative value of the Reddish affidavit (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] ["On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (internal quotation marks omitted)]). We can further infer that the brake was negligently installed by Skoler because he failed to test it in the manner that had been recommended to him. Moreover, the malfunctioning brake clearly enhanced the danger of the zip line. Any argument that plaintiff assumed the risk of a non-working brake is undermined by the facts that the first time he rode the zip line one month earlier he traveled with far less momentum, since the platform, which launched riders at a greater pitch, had not yet been built, and he began approximately 15 feet away from where the platform was later situated. In addition, Skoler's ride on the day of the accident was controlled by plaintiff's having held onto the rope. There is no evidence that plaintiff, who had no experience with zip-lining, should have taken these circumstances into consideration before deciding to ride on the zip line.

The cases cited by the dissent in support of its position that summary judgment was correctly awarded to Skoler are readily distinguishable. In *Sajkowski v Young Men's Christian Assn. of Greater N.Y.* (269 AD2d 105, 105-106 [1st Dept 2000]), this Court explicitly noted that there was no claim that the rope from which the plaintiff swung "broke or was otherwise defective." Similarly, in *Rosenblatt v St. George Health & Racquetball Assoc., LLC* (119 AD3d 45 [2d Dept 2014]), there was no claim that the exercise ball from which the plaintiff fell malfunctioned. In addition, the dissent's statement that "part of the allure of riding a zip line is the enhanced height, speed and potential danger" carries the assumption of risk doctrine past

its reasonable limits. The doctrine applies only to known dangers; there is nothing in the record to suggest that plaintiff welcomed all dangers presented by the zip line, known or unknown, or that the zip line was designed only to attract daredevils. To the contrary, plaintiff knew there was a brake, and, notwithstanding the dissent's implication, there is no evidence that he suspected it was "imprecise" or accepted that it might not have been precise. Further, there is no evidence to support the dissent's suggestion that plaintiff had no reasonable basis for relying on Skoler's ability to erect a safe zip line. Skoler testified that he did extensive research on how to properly build a zip line and plaintiff, in mounting the zip line, was entitled to rely on Skoler's relative expertise.

Because there are issues of fact whether the risk plaintiff encountered was enhanced by a malfunctioning brake and whether plaintiff should have been aware of that enhanced risk, the motion court erred in granting defendant summary judgment. Concur—Mazzarelli, J.P., Saxe, Moskowitz and Kahn, JJ.

Andrias, J., dissents in a memorandum as follows: Because I believe that the motion court correctly granted summary judgment to defendant Joseph Skoler under the assumption of risk doctrine, I respectfully dissent.

In March 2011, Skoler, with the help of plaintiff Alan Zelkowitz, his 43-year-old cousin, built a zip line in the woods behind the two bungalows he leased from defendant Country Group, Inc., of which he was a 50% owner. The zip line was intended for private recreational use, and traversed a 220-foot span between two trees.

The zip line was equipped with a seat that was attached by a rope to its "trolley mechanism," but no safety harness. The zip line also had a braking system, which consisted of a black box placed on the line between the halfway point and the end point, and a bungee cord that ran from the box to an anchor tree. When the rope attaching the seat to the trolley mechanism hit the black box, the bungee cord would stretch and become taut, slowing down the rider.

Skoler purchased the zip line and other materials on the Internet; he had no formal training in physics or engineering. Plaintiff was present for the entire installation, and assisted Skoler in the construction by carrying materials, handing him tools, and holding the work ladder. Plaintiff was aware that Skoler was not an engineer or a professional mechanic or zip line installer or instructor and that he had purchased the materials online. Although plaintiff professes to know little

about zip-lines and claims that he was only a "schlepper," at his deposition he was able to describe the zip line's components and how they were installed, including the braking mechanism. He was also able to describe how the braking mechanism worked.

Skoler first tested the zip line with a big log, then successfully rode it himself. Plaintiff, who had never used a zip line before, then took a turn, and completed a "slow and smooth" ride without incident, observing the "[b]oulders, leaves, dirt[,] [b]ranches [and] forest debris" under the zip line.

On April 26, 2011, plaintiff visited Skoler again. After Skoler successfully tested the zip line by riding it himself, plaintiff took his turn. However, this time it seemed faster and three-quarters of the way through, as the ending tree was coming closer, plaintiff began getting a "little nervous." When he hit the brake box, which, according to plaintiff, Skoler had just adjusted by moving the black bungee line forward towards the end tree, the brake box slowed him down a little, but not as much as it had Skoler. Fearing that he was going to crash head first into the tree at the end of the line, plaintiff put his feet out in front of him, and they slammed into the tree, throwing plaintiff backwards off the seat and onto the ground, where he struck a boulder. Skoler testified that he did not recall making any adjustments to the brakes after his ride.

Plaintiff alleges that Skoler negligently installed and adjusted the zip line, causing the brake system to fail when he used it. Skoler moved for summary judgment on the ground that plaintiff assumed the risk when he voluntarily rode the self-constructed zip line without a harness, including the risk of trying out an imprecise braking system.

Under the doctrine of assumption of the risk, "[a] [person] who voluntarily participates in a sporting or recreational event generally is held to have consented to those commonly-appreciated risks that are inherent in, and arise out of, participation in the sport" (*Valverde v Great Expectations, LLC*, 131 AD3d 425, 426 [1st Dept 2015]). "If a participant makes an informed estimate of the risks involved in the activity and willingly undertakes them, then there can be no liability if he is injured as a result of those risks" (*Turcotte v Fell*, 68 NY2d 432, 437 [1986]).

"Whether it can be concluded that a plaintiff made an informed estimate of the risks involved in an activity before deciding to participate depends on the openness and obviousness of the risk, plaintiff's background, skill, and experience, plaintiff's own conduct under the circumstances, and the

nature of defendant's conduct" (*Lamey v Foley*, 188 AD2d 157, 164 [4th Dept 1993] [footnote omitted]). A plaintiff is deemed to have assumed those risks that are known and fully comprehended, open and obvious, inherent in the activity, and reasonably foreseeable consequences of the activity (*Turcotte*, 68 NY2d at 439).

Applying these principles, Supreme Court correctly granted Skoler's motion for summary judgment dismissing the complaint as against him. Skoler established prima facie that plaintiff, a middle-aged adult, not an immature teenager, who was six feet, four inches tall and weighed approximately 215 pounds, assumed the risks of riding a zip line, an inherently dangerous activity, which include traveling at high speeds and crashing and/or falling off. Plaintiff voluntarily rode the homemade zip line, which he helped build, fully aware that Skoler was not an engineer or zip line expert, that the zip line was not equipped with a safety harness, and that there were rocks, tree stumps and other debris on the ground beneath the zip line (*see Marcano v City of New York*, 99 NY2d 548, 549 [2002] [plaintiff assumed the risk of injury when he swung on and subsequently fell off parallel exercise bars over a concrete floor]). Furthermore, under these circumstances, "where the risk is open and obvious, the mere fact that a defendant could have provided safer conditions is irrelevant" (*Sajkowski v Young Men's Christian Assn. of Greater N.Y.*, 269 AD2d 105, 106 [1st Dept 2000]).

The fact that this was only the second time that plaintiff had used the zip line does not mandate a different result (*see Rosenblatt v St. George Health & Racquetball Assoc., LLC*, 119 AD3d 45, 56 [2d Dept 2014] [plaintiff, who voluntarily sat on an exercise ball during a body sculpting class, assumed the inherent risk that the ball would roll or rotate and cause her to fall, despite her claim that she had never used an exercise ball before]). Nor does the fact that plaintiff may not have anticipated the exact way in which he could be injured warrant the denial of summary judgment. "It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (*Maddox v City of New York*, 66 NY2d 270, 278 [1985]).

Plaintiff failed to raise a triable issue of fact as to whether the injury-causing event resulted from Skoler's negligence, which plaintiff contends created unique and dangerous conditions beyond those inherent in the sport. The affidavit by

plaintiff's expert was conclusory and speculative (*see Schwartz v Kings Third Ave. Pharmacy, Inc.*, 116 AD3d 474, 475 [1st Dept 2014]). Among other things, the expert's statement that the slope was too steep based on alleged "[a]pplicable standards," rather than mandatory guidelines, is insufficient to raise an issue of fact (*see e.g. Merson v Syosset Cent. School Dist.*, 286 AD2d 668, 670 [2d Dept 2001]).

While plaintiff asserts that he held Skoler back with a restraining rope for the first 30 feet of his ride to reduce his momentum, and that Skoler did not do the same for him, plaintiff did not ask Skoler to do so, and there is no evidence that the absence of the rope in any way caused plaintiff to collide with the tree at the end of the 220-foot span. Nor did plaintiff establish that any risks were unreasonably increased or concealed.

The majority disagrees, assuming for the purposes of the motion that the braking mechanism malfunctioned, because plaintiff testified that he failed to slow down to the same extent that Skoler had done only moments before, which enhanced the danger of riding the zip line. However, the majority fails to give due consideration to the facts that plaintiff's physical characteristics were not identical to Skoler's and that part of the allure of riding a zip line is the enhanced height, speed and potential danger. Plaintiff, who knew that Skoler's knowledge of zip line construction was limited at best, and that Skoler was not a professional zip line instructor, and who helped build the zip line with materials purchased from the Internet, should have appreciated that crashing and falling are inherent risks of riding a homemade zip line that was not equipped with a safety harness and that had an imprecise braking mechanism that was subject to adjustment by trial and error.

Accordingly, I would affirm the grant of summary judgment in Skoler's favor.