Thompson v Windham Mtn. Partners, LLC (2018 NY Slip Op 03415)





Thompson v Windham Mtn. Partners, LLC


2018 NY Slip Op 03415


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

525721

[*1]CYNTHIA THOMPSON, Respondent,
v
WINDHAM MOUNTAIN PARTNERS, LLC, et al., Appellants.

Calendar Date: March 28, 2018

Before: Garry, P.J., McCarthy, Lynch, Clark and Pritzker, JJ.


Roemer Wallens Gold & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for appellants.
Law Office of Gary A. Cusano, PC, Bedford Hills (Gary A. Cusano of counsel), for respondent.


Clark, J.

MEMORANDUM AND ORDER
Appeal from an order of the Supreme Court (Fisher, J.), entered July 5, 2017 in Greene County, which denied defendants' motion for summary judgment dismissing the complaint.
In December 2011, while snow tubing at Windham Mountain Adventure Park, plaintiff sustained injuries when her snow tube, which was linked to the snow tubes of her two daughters, slid up and over the outer barrier of her snow tubing lane and ultimately collided with a padded metal pole situated some 30 to 70 feet away. Plaintiff subsequently commenced this negligence action against defendants, the owners and operators of Windham. Defendants answered and asserted several affirmative defenses, including that plaintiff had assumed the risk of injury when she
engaged in the activity of snow tubing. Following discovery, defendants moved for summary judgment dismissing the complaint on the basis that plaintiff's claim was barred by the primary assumption of the risk doctrine. Supreme Court denied the motion, and defendants now appeal.
Under the doctrine of primary assumption of the risk, a voluntary participant in a recreational activity, such as snow tubing, "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Connolly v Willard Mtn., Inc., 143 AD3d 1148, 1148 [2016]; Tremblay v West Experience, 296 AD2d 780, 780-781 [2002]). However, the "participant[] will not be deemed to have assumed the risks of reckless or [*2]intentional conduct or concealed or unreasonably increased risks" (Morgan v State of New York, 90 NY2d at 485 [internal citations omitted]; accord Anand v Kapoor, 15 NY3d 946, 948 [2010]; see Youmans v Maple Ski Ridge, Inc., 53 AD3d 957, 958-959 [2008]). "Awareness of the risk of engaging in a particular activity is to be assessed against the background of the skill and experience of the particular plaintiff, and application of the doctrine generally presents a question of fact for a jury to resolve" (Hope v Holiday Mtn. Corp., 123 AD3d 1274, 1275 [2014] [internal quotation marks and citations omitted]; see Maddox v City of New York, 66 NY2d 270, 278 [1985]).
In support of their motion, defendants submitted, among other things, photographs of the snow tubing hill and the deposition testimony of Windham's project manager, plaintiff and one of plaintiff's companions on the day in question. The project manager's testimony established that, on any given day, there could be between 6 and 10 snow tubing lanes open at Windham and the lanes were separated by manufactured snow berms, which could range in height from 1½ feet to 2½ feet. He asserted that the height of the berms could decrease over the course of a day as a result of melting or tubes wearing them down and that, although tubers generally should not be able to go over the top of the berms, he had occasionally seen this happen. The project manager also testified that, at the time of plaintiff's injury, there was no policy prohibiting lane attendants from spinning patrons prior to their descent. He further stated that the number of tubes, if any, that could be linked together was determined by lane safety attendants at the bottom of the hill based on their observations and assessments of the weather and resulting lane conditions.
Additionally, the photographs and the testimony of the project manager and plaintiff's companion demonstrated the existence of several padded poles, which were situated between 30 and 70 feet away from plaintiff's lane and were readily observable from both the hill and the lift line to the top of the hill. Plaintiff's testimony established that she had some experience with snow tubing before her accident, having snow-tubed three years earlier and completed several prior runs without incident on the day in question. Further, with respect to the injury-producing run, which occurred around 3:00 p.m., plaintiff stated that she and her daughters had decided to ride tandem and that, when asked if they wanted to be spun, she had said yes. This evidence was sufficient to satisfy defendants' burden of demonstrating that plaintiff — who had prior experience snow tubing and who had occasion to observe the hill's conditions during her prior snow tubing runs on the day in question — assumed the inherent risk that her snow tube would spin out of control, go over the top of the snow berm and collide with one of the nearby padded poles (see Connolly v Willard Mtn., Inc., 143 AD3d at 1149; Youmans v Maple Ski Ridge, Inc., 53 AD3d at 959; Tremblay v West Experience, 296 AD2d at 781; see generally Morgan v State of New York, 90 NY2d at 484).
The burden thus shifted to plaintiff to demonstrate "facts from which it could be concluded that defendant concealed or unreasonably enhanced the danger . . . or created conditions which were unique or above those inherent in [the] activity" (Youmans v Maple Ski Ridge, Inc., 53 AD3d at 959; accord Connolly v Willard Mtn., Inc., 143 AD3d at 1149; see Morgan v State of New York, 90 NY2d at 485). To that end, plaintiff primarily relied on the deposition testimony of her companion and the project manager to argue that the weather and the condition of the lanes and snow berms on the day in question were such that spinning and in tandem tubing were contraindicated and, therefore, should not have been allowed. In particular, plaintiff's companion testified that she walked from plaintiff's lane to the pole with which plaintiff collided and found the terrain to be "[i]cy" and "hard." Additionally, based on his examination of the glare and shadows in the photographs taken on the day of the accident, the project manager testified that the lanes and snow berms appeared "icy" and that the lanes were [*3]"probably getting a bit frozen over" and "fast." He stated that when the lanes "iced up" and became too fast, the lane safety attendants at the bottom of the hill were supposed to either cut down the number of tubers that were permitted to ride together or prohibit tandem riding altogether. He further stated that he had previously observed snow tubers leave their lanes as a result of being spun. In our view, the foregoing proof, considered in the light most favorable to plaintiff (see Lau v Margaret E. Pescatore, Inc., 30 NY3d 1025, 1027 [2017]; Daigle v West Mtn., 289 AD2d 838, 840 [2001]), raises a factual issue as to whether the risk of injury was unreasonably increased by the actions of the lane attendants — namely, allowing plaintiff and her daughters to ride tandem and spinning their tubes prior to their descent — under the particular weather and terrain conditions at the time of plaintiff's injury (see Connolly v Willard Mtn., Inc., 143 AD3d at 1150; Huneau v Maple Ski Ridge, Inc., 17 AD3d 848, 849 [2005]; Daigle v West Mtn., 289 AD2d at 840). Accordingly, Supreme Court properly denied defendants' motion for summary judgment dismissing the complaint.
Garry, P.J., McCarthy, Lynch and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.