■ SHEILA SHARROW et al., Respondents, v NEW YORK STATE OLYMPIC REGIONAL DEVELOPMENT AUTHORITY, Appellant. [762 NYS2d 703] —Cardona, P.J. Appeal from a judgment of the Court of Claims (Collins, J.), entered June 20, 2002, upon a decision of the court following a bifurcated trial in favor of claimants on the issue of liability.

On February 13, 2000, claimant Sheila Sharrow (hereinafter claimant) fell and sustained injuries when she skied over a man-made jump, known as a "tabletop," on the "Jug Handle" trail at Gore Mountain Ski Center located in the Town of North Creek, Warren County. Claimant and her husband, derivatively, brought this claim against defendant, the owner and operator of Gore Mountain. Following a bifurcated trial on the issue of liability, the Court of Claims, in a thorough and well-reasoned decision, found both claimant and defendant negligent; defendant, for a breach of the common-law duty to warn of the existence of the man-made variation in the terrain, and

claimant for her failure to observe a sign posted at the entrance to Jug Handle warning of its upgrade in degree of difficulty to most difficult. The court apportioned liability 25% to claimant and 75% to defendant. Defendant appeals arguing that the defense of assumption of the risk bars the claim and, alternatively, that claimant's failure to observe what was there to be seen was the sole cause of the accident.

The evidence revealed that defendant designates its trails on Gore Mountain as "easier," "more difficult" and "most difficult" by using color-coded symbols indicating varying degrees of difficulty on its signs, maps and brochures. Easier trails are designated by a green circle, more difficult by a blue square and most difficult by a black diamond. Jug Handle is a 300- to 400-foot-long, semi-circular trail which is entered from another ski trail know as "Showcase." Jug Handle is wooded on both sides and proceeds in a continuous arc until it becomes a straightaway for some 200 to 250 feet before it reenters Showcase. Claimants testified that they skied Jug Handle on February 6, 2000 and, at that time, no tabletop jump was present. When they returned to Gore on February 13, 2000, they did not intend to ski any of the black diamond trails. They reviewed a large trail map attached to the wall of a building at the Adirondack Express chairlift to determine which trails they were going to ski. Although Jug Handle was not a trail they initially determined to ski, claimant's husband testified that he recalled that it was designated on the map as a blue square trail.

Claimant describes herself as an intermediate skier, having skied approximately seven or eight times in the 1998/1999 ski season and approximately 10 times in the 1999/2000 season. Approximately 10 to 12 of her ski outings during those seasons took place at Gore Mountain. As previously noted, she skied Jug Handle on one prior occasion, namely, on February 6, 2000. On the day of the accident, claimant contended that she skied only the blue square trails. On their final descent, claimants started on Showcase until claimant yelled to her husband to take Jug Handle. Neither skier observed any signs, warnings or posters upon entering the trail. They encountered the tabletop jump immediately following a blind curve in the middle of the trail.[1] The proof revealed that the tabletop jump appeared the same color as the surrounding snow and was marked at the top by a monopod, a marker consisting of an

---

1. The jump, constructed of snow, measured 20 to 25 feet in length, 14 to 16 feet in width and 6 to 8 feet in height. The trail at that point was approximately 40 feet wide.

eight-foot orange bamboo pole topped by an eight-inch diameter blaze orange plastic disk, used to mark obstacles and hazards within the skiable terrain. Claimant's husband successfully skied over the jump. Claimant, who did not observe the jump until it was directly in front of her, could not avoid going over it and fell. Credible evidence in the record established that the jump was constructed by defendant's employees sometime after February 6, 2000 and before February 13, 2000. Notably, the evidence established that Jug Handle was described as a blue square trail in all of defendant's signs, maps and brochures other than at the entrance to that trail. At that location, on February 10, 2000, defendant's employees bolted a trail sign[2] with a black diamond symbol warning of its upgrade to "most difficult." Both claimants testified that they never saw that sign.

Defendant essentially argues that claimant assumed the obvious and inherent risk of skiing down a trail marked with a black diamond which was admittedly beyond her limited skiing ability and known to contain man-made terrain variations or, alternatively, if she did not assume the risk inherent in skiing that trail, her failure to observe the sign was the sole cause of her accident. "[B]y engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]). Notably, a particular plaintiff's knowledge and appreciation of the risk is " 'to be assessed against the background of [his or her] skill and experience' " (*id.* at 486, quoting *Maddox v City of New York*, 66 NY2d 270, 278 [1985]; *see Hyland v New York*, 300 AD2d 794, 795 [2002]). Assumption of the risk, in the context of a person participating in a sporting or recreational activity, " 'is really a *principle of no duty*, or no negligence and so *denies the existence of any underlying cause of action*' " (*Morgan v State of New York, supra* at 485 [emphasis in original], quoting Prosser and Keeton, Torts § 68, at 496 [5th ed]). It relieves the owner or operator of a sporting or recreational venue from all liability, provided, "the conditions [are] as safe as they appear to be" (*Turcotte v Fell*, 68 NY2d 432, 439 [1986]; *see Morgan v State*

---

2. This sign was painted a chrome yellow and measured some 32 inches wide and 48 inches high. It contained an inner white box measuring 14 inches by 21 inches which served as the background for a black diamond measuring some 12½ inches from point to point and the words "MOST DIFFICULT" in block lettering 2½ to 3 inches in height. Beneath that was a legend reading: "This trail contains one or more of the following elements: 1-Tabletop, 2-Double Jump Look Before You Leap."

*of New York, supra* at 484). A participant in a sporting or recreational activity will not be "deemed to have assumed * * * concealed or unreasonably increased risks" (*Morgan v State of New York, supra* at 485; *see Benitez v York City Bd. of Educ.*, 73 NY2d 650, 658 [1989]).

Here, claimant was an intermediate downhill recreational skier who had only skied Jug Handle on one prior occasion, the week preceding the accident, at a time when it did not contain the tabletop. On the date of the accident, Jug Handle continued to be represented on all of defendant's signs, maps and brochures as a blue square trail, on which skiers would not expect to find terrain elements like the tabletop. Claimant consulted both a brochure containing a map and the map board at the Adirondack Express chairlift prior to skiing Jug Handle and was aware that it was designated a blue square trail. Despite the existence of the "most difficult" sign at the entrance to the trail, the testimony from defendant's general manager revealed that it was not uncommon for skiers to ski directly from one trail onto an adjoining trail without stopping to take notice of the trail sign. Moreover, we agree with the Court of Claims that the location of the tabletop, in midtrail immediately following a sharp right-hand curve, was a hazard concealed from view of those entering the trail. Under these circumstances, we find that defendant violated its duty to make the skiing conditions "as safe as they appear[ed] to be" (*Turcotte v Fell, supra* at 439; *Morgan v State of New York, supra* at 484). The tabletop constituted an increased risk and, therefore, one not within the range of risks that claimant assumed. Accordingly, defendant failed to establish the defense of assumption of the risk.

Furthermore, we agree with the reasoning of the Court of Claims that defendant failed to satisfy its common-law duty to adequately warn of the danger posed by the tabletop. As the court stated:

"The testimony clearly shows that there were both means and opportunity for the defendant to warn skiers that Jug Handle's designation had changed but no postings were made, no public address announcements were issued, no labels were attached to trail maps, vacation planners or brochures, no inserts were handed out at ticket windows and no information was provided on the facility's Internet Web site. The sole notice of the change in Jug Handle's level of difficulty was the trail sign itself. * * * Absent notice of the change skiers, especially those who had skied the trail previously during the ski season and prior to the addition of the jump, had every reason to

suspect that the trail remained a more difficult rather than a most difficult trail containing a jump" (193 Misc 2d 20, 40-41 [2002]). We also find no abuse of discretion in the court's apportionment of liability in that claimant's failure to observe the sign at the entrance to the trail constituted negligence.

In light of our decision herein, we need not reach claimants' remaining contentions, including those alleging defendant's violation of General Obligations Law § 18-103 (4), (5) and (11), the Safety in Skiing Code. Finally, we have considered defendant's remaining arguments and find them lacking in merit.

Spain, Carpinello, Mugglin and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs. [*See* 193 Misc 2d 20.]