■ DAVID MYERS, Individually and as Parent and Guardian of SAMANTHA MYERS, an Infant, Respondent, v FRIENDS OF SHENEN-DEHOWA CREW, INC., et al., Appellants. [819 NYS2d 143]—

Crew III, J. Appeal from an order of the Supreme Court (Williams, J.), entered December 5, 2005 in Saratoga County, which denied defendants' motion for summary judgment dismissing the complaint.

On December 10, 2002, then 14-year-old Samantha Myers participated in a winter training program with defendant Friends of Shenendehowa Crew, Inc. (hereinafter Shenende-howa) under the supervision of defendant Jouri Kolomiets, Shenendehowa's head coach. Shenendehowa's winter training program met five days a week for approximately 2½ hours each day at the Southern Saratoga YMCA in the Town of Clifton Park, Saratoga County. Approximately 30 minutes into practice on the day in question, Myers fainted and struck the back of her head on the gymnasium floor. Kolomiets helped Myers to her feet, escorted her to the front desk of the YMCA, asked that a nurse be summoned and returned to the gymnasium, whereupon Myers again fainted, this time striking the back of her head on the tile floor of the lobby. Myers's mother was notified and thereafter drove Myers to her pediatrician's office, where Myers suffered her first seizure. The pediatrician then called 911 and emergency medical personnel arrived to transport Myers to Albany Medical Center. While en route, Myers suffered what plaintiff alleges to be a second grand mal seizure.

Plaintiff, Myers's father, thereafter commenced this negligence action against Shenendehowa and Kolomiets alleging, among other things, that Kolomiets negligently supervised Myers's participation in the winter training program and failed to properly care for Myers after her initial collapse. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint, contending that Myers voluntarily assumed the risk of injury and, further, that Kolomiets provided adequate supervision to Myers and did not otherwise

breach his duty of care to her. Supreme Court denied defendants' motion, finding questions of fact as to both the assumption of the risk and negligent supervision issues. This appeal by defendants ensued.

The relevant case law makes clear that "by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" therein (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *see Huneau v Maple Ski Ridge, Inc.*, 17 AD3d 848, 849 [2005]; *Sharrow v New York State Olympic Regional Dev. Auth.*, 307 AD2d 605, 607 [2003]). "Thus, the risks of becoming injured due to fatigue, being bumped by a horse during a race or exhibition, or being struck by a ball or bat during a baseball game are risks which various participants are legally deemed to have accepted personal responsibility for because they commonly inhere in the nature of those activities" (*Morgan v State of New York, supra* at 484 [citations omitted]). It is equally clear, however, that "[a] participant does not . . . assume risks that result in a 'dangerous condition over and above the usual dangers inherent in the activity' " at issue (*Huneau v Maple Ski Ridge, Inc., supra* at 849, quoting *Rios v Town of Colonie*, 256 AD2d 900, 900 [1998]; *see Sharrow v New York State Olympic Regional Dev. Auth., supra* at 608) and, further, that "[a]ssumption of the risks involved in a sporting event 'is not an absolute defense but a measure of the defendant's duty of care' " (*Laboy v Wallkill Cent. School Dist.*, 201 AD2d 780, 780 [1994], quoting *Turcotte v Fell*, 68 NY2d 432, 439 [1986]). Notably, whether a given participant is aware of and appreciates a particular risk must be assessed against his or her skill, background and experience (*see Sharrow v New York State Olympic Regional Dev. Auth., supra* at 607; *de Lacy v Catamount Dev. Corp.*, 302 AD2d 735, 736 [2003]; *Hyland v State of New York*, 300 AD2d 794, 795 [2002], *lv denied* 100 NY2d 504 [2003]).

Applying these principles to the matter before us, we agree with Supreme Court that questions of fact exist as to whether Myers appreciated and assumed the risks associated with participating in Shenendehowa's winter training program, whether Kolomiets's conduct created a dangerous condition above and beyond those inherent in the sport of rowing and, finally, whether Kolomiets failed to provide proper supervision during the winter training program. Accordingly, for the reasons that follow, Supreme Court's order denying defendants' motion for summary judgment dismissing the complaint is in all respects affirmed.

The record reflects that Myers, who rowed for Shenendehowa during the fall 2002 season and for Burnt Hills during the summer 2002 season, was a novice rower, the "lowest level" of rower then participating in Shenendehowa's winter training program. Most of the rowers involved in the winter 2002 training program were varsity-level rowers and, although the training program had been underway for approximately one week at the time Myers was injured on December 10, 2002, that day was the first time that Myers had been coached by Kolomiets.

Myers testified at her examination before trial that she arrived at the gym that day and ran laps for approximately 20 minutes, after which she and her teammates took a water break and moved to the gymnasium for general exercises. After warming up, Myers and her teammates began performing "jumpies," which Kolomiets characterized as a strenuous exercise, back and forth across the gymnasium. At some point during this activity, Myers told one of her teammates that she felt faint and called out to Kolomiets that she needed water. According to Myers, Kolomiets told her to "[k]eep working," and the jumpies continued. When this activity ended a short time later, Myers passed out and struck the back of her head on the gymnasium floor. Although Kolomiets apparently denies hearing Myers's request for water, he readily admits that a lack of hydration can lead to a loss of consciousness. Kolomiets nonetheless testified at his examination before trial that rowers had to wait for a break in the planned workout to get water, reasoning that the goal of an endurance workout, i.e., to build stamina, could not be achieved if the workout repeatedly was interrupted. Additionally, Kolomiets denied that it was his responsibility to ensure that rowers took appropriate water breaks during a particular workout.[1] Kolomiets stated, however, that had Myers informed him that she felt ill or faint, he would have told her to stop exercising.

While it is true that "the association of certain risks with

---

1. Notably, plaintiff's exhibit No. 3, a summary of Shenendehowa's "Coaches' Responsibilities," required all of Shenendehowa's coaches to "educate rowers about . . . adequate sports nutrition and hydration," to "ensure that rowers are adequately hydrated during practices and races" and to "conduct safe, structured workout sessions both on land and on water." This document indicates that it was revised at some point in December 2002, and the record is silent as to whether such revisions occurred before or after Myers was injured and what specific changes were made. This issue need not detain us, however, inasmuch as Kolomiets acknowledged at his examination before trial that Shenendehowa's then president of the board of directors attached "great importance" to adequate hydration and "reminded us again and again about this" issue.

certain sports is something which may be 'comprehended even by a novice' " (*Petretti v Jefferson Val. Racquet Club*, 246 AD2d 583, 584-585 [1998], quoting *Steegmuller v Siegel*, 202 AD2d 855, 856 [1994], *lv denied* 83 NY2d 760 [1994]), given Myers's status as a novice rower, her limited participation in Shenendehowa's winter training program and her lack of prior coaching by Kolomiets, it cannot be said, as a matter of law, that Myers was aware of and appreciated the risks associated with the winter training program—specifically, the perils of exercising without adequate hydration and/or pushing herself to finish a workout when she felt ill—and that she, in turn, voluntarily assumed such risks. Moreover, viewing the evidence, as we must, in the light most favorable to the nonmoving party (*see Wells v British Am. Dev. Corp.*, 2 AD3d 1141, 1142 n 1 [2003]), we find a question of fact as to whether the manner in which Kolomiets conducted the winter training program on the day in question unreasonably heightened the risks to which Myers was exposed.

Moreover, even accepting defendants' claim that Myers voluntarily assumed the risks inherent in participating in Shenendehowa's winter training program, there clearly exists a question of fact as to whether Kolomiets provided adequate supervision to Myers once she fainted in the gymnasium. In this regard, Myers testified that when she regained consciousness, Kolomiets told her to get up, stating, "Hurry, hurry, c'mon, follow me," and escorted her to the front desk of the YMCA. Myers testified that upon arriving at the front desk, she informed Kolomiets that she was going to faint again. Although Kolomiets testified that he escorted Myers to the front desk only after she assured him that she was alright and that Myers thereafter repeatedly insisted that she was fine, regardless of what was or was not said between the two of them, it is undisputed that, after asking the individual behind the front desk to summon medical aid, Kolomiets left Myers standing unattended on the opposite side of the desk and returned to the gymnasium—despite the fact that one of Shenendehowa's parent advisors was present in the gymnasium to supervise the remaining rowers. As Kolomiets walked away, Myers again fainted and again struck her head. Although counsel argues in defendants' brief that it was not unreasonable for Kolomiets to believe that, given her purported assurances, Myers would be safe waiting at the front desk for medical attention and that his "miscalculation" in this regard does not amount to actionable negligence, the reasonableness of Kolomiets's conduct plainly constitutes a question of fact for a

jury to resolve.[2] Defendants' remaining contentions, to the extent they are properly before us, have been examined and found to be lacking in merit.

Mercure, J.P., Spain, Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, with costs.

---

**2.** We note in passing that Shenendehowa's "Coaches' Responsibilities" further provided that "[i]f a participant loses consciousness or requires other than minor first aid, '911' should be called," which did not occur here until after Myers arrived at her pediatrician's office. The parties make no mention of this directive in their briefs and, as previously observed, given that this document was revised at some undisclosed point in December 2002, it is unclear whether this requirement was in place on the date of Myers's accident. Accordingly, this provision has played no role in our decision here.