■ DIANNE A. LAYDEN et al., Appellants, v ANGELA PLANTE et al., Respondents. [957 NYS2d 458]—

Garry, J.

The doctrine of assumption of risk provides that a person

who voluntarily participates in recreational or athletic activities is deemed to consent to the "commonly appreciated risk[s]" inherent in that activity (*Anand v Kapoor*, 15 NY3d 946, 948 [2010]; *see Morgan v State of New York*, 90 NY2d 471, 484 [1997]). However, a participant does not assume risks resulting from "a dangerous condition over and above the usual dangers inherent in the activity" (*Myers v Friends of Shenendehowa Crew, Inc.*, 31 AD3d 853, 854 [2006] [internal quotation marks and citations omitted]; *see Custodi v Town of Amherst*, 20 NY3d 83, 87-88 [2012]). As application of the doctrine undermines the principles of comparative causation, it "must be closely circumscribed" and has therefore been limited to apply only "in the context of pursuits both unusually risky and beneficial that the defendant has *in some nonculpable way* enabled" (*Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395, 396 [2010] [emphasis added]; *see Shay v Contento*, 92 AD3d 994, 995 [2012]).

Initially, noting that assumption of risk has been applied to the use of exercise apparatus, we reject plaintiffs' contention that the doctrine does not apply to the noncompetitive fitness activity in which plaintiff was engaged (*see Marcano v City of New York*, 99 NY2d 548, 549 [2002]). Further, plaintiff's own testimony established that she had previously participated in weight-lifting exercise programs—including a prior program designed by the trainer—and that she knew that back injuries are an inherent risk of such activities. Accordingly, we find that defendants met their initial burden on summary judgment to establish on a prima facie basis that plaintiff knew of the risks, appreciated their nature and voluntarily assumed them (*see Morgan v State of New York*, 90 NY2d at 484-485; *Papa v Russo*, 279 AD2d 744, 745 [2001], *lv denied* 99 NY2d 507 [2003]).

However, noting that "[t]he application of the doctrine of assumption of risk is generally a question of fact to be resolved by a jury" (*McGrath v Shenendehowa Cent. School Dist.*, 76 AD3d 755, 757 [2010]; *see Pantalone v Talcott*, 52 AD3d 1148, 1149 [2008]), we find triable issues of fact presented as to whether the trainer's actions "unreasonably heightened the risks to which [plaintiff] was exposed" beyond those usually inherent in weight-lifting (*Myers v Friends of Shenendehowa Crew, Inc.*, 31 AD3d at 856). Plaintiffs presented the affidavits of two personal training experts who opined that the Smith squat, even when properly performed, is contraindicated for a person with a herniated disc as it causes "direct vertical loading of the spinal column" and places "extreme stress" on the lower back, and thus should not have been recommended for plaintiff. The experts

further averred that safe performance of the maneuver requires keeping the back straight, and that the trainer erred in instructing plaintiff to "stick her butt out" during the exercise. The trainer acknowledged that she gave plaintiff this instruction but explained that she meant that plaintiff should move her body backward while keeping her back straight.[1] The trainer further testified that whether the Smith squat is dangerous for a person with a back injury "depends on the form" used by the exerciser and acknowledged that, although she knew plaintiff had a herniated disc, she did not warn plaintiff that the exercise posed any risk to her back. Based on this testimony, plaintiffs raised triable issues of fact as to whether the trainer's direction to perform the Smith squat, her allegedly improper instructions, or both, served to unreasonably increase the risk to which plaintiff was exposed (*see Corica v Rocking Horse Ranch, Inc.*, 84 AD3d 1566, 1568 [2011]; *Myers v Friends of Shenendehowa Crew, Inc.*, 31 AD3d at 856; *Mathis v New York Health Club*, 261 AD2d 345, 346 [1999]; *compare Lee v Maloney*, 270 AD2d 689, 691 [2000]).

As an alternate ground for affirmance, Greenfield contends that there is no evidence that she breached a duty that proximately caused plaintiff's injury (*see generally Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Plaintiffs do not assert that plaintiff's injury resulted from faulty equipment or any other property defect at the fitness center, and although one of plaintiffs' experts described multiple alleged inadequacies in the fitness center's safety procedures, there was no showing that these caused or contributed to plaintiff's injury. Instead, both experts averred without equivocation that the trainer caused the injury by instructing plaintiff to perform the Smith squat despite her back condition. Thus, no direct negligence was shown, and Greenfield may be held liable only if the trainer's negligence may be imputed under a theory of respondeat superior. As to this doctrine, Greenfield contends that there is no derivative liability because the trainer was an independent contractor rather than an employee (*see Rackowski v Realty USA*, 82 AD3d 1475, 1476-1477 [2011]; *Birch v McGhee*, 79 AD3d 1296, 1297-1298 [2010]). This determination requires analysis of the extent of the fitness center's power to regulate the manner in which the trainer performed her work, and the parties' conflicting evidence poses factual questions as to this issue, barring summary determination (*see Roberts v El-Hajal*, 23 AD3d 733, 733 [2005]; *Meyer v Martin*, 16 AD3d 632, 633-634

---

1. The trainer's written instructions include the direction to "stick butt out," but do not mention keeping the back straight.

[2005]; *Mason v Spendiff*, 238 AD2d 780, 781 [1997]; *compare Harjes v Parisio*, 1 AD3d 680, 681-682 [2003], *lv denied* 1 NY3d 508 [2004]).

Finally, we find the release that Greenfield proffers to be unenforceable. An agreement that seeks to release a defendant from the consequences of his or her own negligence must "plainly and precisely" state that it extends this far (*Rigney v Ichabod Crane Cent. School Dist.*, 59 AD3d 842, 843 [2009] [internal quotation marks and citations omitted]; *see Lago v Krollage*, 78 NY2d 95, 99-100 [1991]; *Gross v Sweet*, 49 NY2d 102, 110 [1979]). The release at issue here makes no unequivocal reference to any negligence or fault of the fitness center employees or agents, but merely enumerates activities on *plaintiff's* part that will not lead to liability, and then provides in general terms that the fitness center is not liable for "any claims, demands, injuries, damages or actions" resulting from use of the facility. This release does not bar plaintiffs' claim (*see Rigney v Ichabod Crane Cent. School Dist.*, 59 AD3d at 843; *Trummer v Niewisch*, 17 AD3d 349, 349-350 [2005], *lv denied* 5 NY3d 712 [2005]; *Alexander v Kendall Cent. School Dist.*, 221 AD2d 898, 899 [1995]).[2]

Kavanagh and Stein, JJ., concur.

Mercure, J.P. (dissenting). Because we conclude that plaintiff Dianne A. Layden (hereinafter plaintiff) assumed the risk of aggravating her prior back injury while weight-lifting at a gym, we respectfully dissent. The doctrine of primary assumption of risk provides that a voluntary participant "engaging in a sport or recreational activity . . . consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *accord Anand v Kapoor*, 15 NY3d 946, 947-948 [2010]; *see Bukowski v Clarkson Univ.*, 19 NY3d 353, 356 [2012]). The doctrine limits the scope of the duty owed to a voluntary participant—"[u]nder this theory, a plaintiff who freely accepts a known risk 'commensurately negates any duty on the part of the defendant to safeguard him or her from the risk' " (*Custodi v Town of Amherst*, 20 NY3d 83, 87 [2012], quoting *Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010]). While "participants are not deemed to have assumed risks resulting from the reckless or intentional conduct of others, or risks that are concealed or unreasonably enhanced," the duty of care that is owed is simply " 'to make

---

**2.** As the release does not exempt defendants from liability for their own negligence, General Obligations Law § 5-326 does not apply (*see Rigney v Ichabod Crane Cent. School Dist.*, 59 AD3d at 843 n).

the conditions as safe as they appear to be' " (*Custodi v Town of Amherst*, 20 NY3d at 88, quoting *Turcotte v Fell*, 68 NY2d 432, 439 [1986]).

As we have previously acknowledged, " '[e]xtensive and unrestricted application of the doctrine of primary assumption of the risk to tort cases generally represents a throwback to the former doctrine of contributory negligence' " abolished by CPLR 1411 (*Trupia v Lake George Cent. School Dist.*, 62 AD3d 67, 69 [2009], *affd* 14 NY3d 392 [2010], quoting *Pelzer v Transel El. & Elec. Inc.*, 41 AD3d 379, 381 [2007]). Thus, the primary assumption of risk "doctrine 'must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation' " (*Custodi v Town of Amherst*, 20 NY3d at 89, quoting *Trupia v Lake George Cent. School Dist.*, 14 NY3d at 395). Nevertheless, the doctrine is not limited to organized sporting events or competitions, as plaintiffs assert; rather, the doctrine, if otherwise applicable, encompasses noncompetitive fitness or exercise activity (*see Marcano v City of New York*, 99 NY2d 548, 549 [2002]; *Feeney v Manhattan Sports Club*, 227 AD2d 293, 294 [1996]; *but see Corrigan v Musclemakers, Inc.*, 258 AD2d 861, 862-863 [1999]). Most recently, the Court of Appeals has explained that "application of assumption of the risk should be limited to cases appropriate for absolution of duty"— i.e., " 'case[s] in which the defendant[s] solely by reason of having sponsored or otherwise supported some risk-laden but socially valuable voluntary activity ha[ve] been called to account in damages' " (*Custodi v Town of Amherst*, 20 NY3d at 89, quoting *Trupia v Lake George Cent. School Dist.*, 14 NY3d at 396). The Court noted that in its prior cases applying the doctrine, the defendant "sponsored or otherwise supported" the activity, or it "occurred in a designated athletic or recreational venue" (*Custodi v Town of Amherst*, 20 NY3d at 88).

Among those prior cases were two in which students were injured while attending martial arts classes (*see id.*, citing *Morgan v State of New York*, 90 NY2d at 486-488). As in this case, the plaintiffs' noncompetitive, noncontact exercise activity took place at designated venues and the plaintiffs challenged the adequacy of the supervision—in one case, a 15-year old student was left in charge of the class—as well as the quality of the instruction and the particular exercises that they were directed to perform (*see Morgan v State of New York*, 90 NY2d at 481, 486-488). Nevertheless, the Court of Appeals concluded that the plaintiffs had assumed the risk of falling while tumbling and performing floor exercises (*id.* at 487-488). In explaining the justification for application of the doctrine, the Court explained

that "[t]he primary means of improving one's sporting prowess and the inherent motivation behind participation in sports is to improve one's skills by undertaking and overcoming new challenges and obstacles" (*id.* at 487).

Here, plaintiff was experienced with weight-lifting and had been a member of No Limits Fitness, the fitness center owned by defendant Deborah W. Greenfield, for nine months prior to the accident. She first hired defendant Angela Plante, a certified personal trainer, to design an exercise program in March 2007, and then performed the exercise program on her own for three months. Thereafter, plaintiff requested that Plante teach her a new program "because [plaintiff] was getting tired of doing the same exercises for three months. [She] wanted to learn new exercises." Plaintiff performed the new exercise program during a single training session with Plante without experiencing any discomfort, but experienced mild back pain shortly afterwards and for the next day. Although plaintiff had a history of back problems and was aware that she had a herniated disc, she nevertheless returned to perform the program by herself and felt back pain while performing a Smith squat. Plaintiff acknowledged that her discomfort was apparent from the first squat, but she continued to do 14 more.

In our view, plaintiff—who was a registered nurse and well aware both of her preexisting back condition and that weight-lifting could further injure her back—assumed this commonly appreciated risk (*see Anand v Kapoor*, 15 NY3d at 948). Given plaintiff's admitted awareness of the risk, any assertion that Plante's exercise program unreasonably enhanced the risk is meritless inasmuch as plaintiff's reliance on Plante to negate the danger of further injury was not justifiable (*see Feeney v Manhattan Sports Club*, 227 AD2d at 294). Despite the parties' dispute over whether Plante told plaintiff to stop any exercise that caused her pain and whether the Smith squat was contraindicated for anyone with a herniated disc, there is no evidence that Plante or anyone else either urged plaintiff to continue with that exercise or reassured her that performing it was safe despite her discomfort (*cf. Corica v Rocking Horse Ranch, Inc.*, 84 AD3d 1566, 1568 [2011]; *Myers v Friends of Shenendehowa Crew, Inc.*, 31 AD3d 853, 854-856 [2006]; *Mathis v New York Health Club*, 261 AD2d 345, 346 [1999]). Nor is there any evidence that plaintiff was encouraged to stop performing the previous program that Plante had designed and that plaintiff had safely used for three months. Rather, plaintiff simply grew "tired" of the previous program and, despite her awareness of the risk, sought to "improve [her weight-lifting]

skills by undertaking and overcoming new challenges and obstacles" (*Morgan v State of New York*, 90 NY2d at 487). Under these circumstances, the doctrine of primary assumption of risk bars recovery as a matter of law.

Malone Jr., J., concurs. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motions for summary judgment; motions denied; and, as so modified, affirmed.