■ Erez Tadmor, Respondent, v New York Jiu Jitsu Inc., Appellant. [970 NYS2d 777]—

Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered August 13, 2012, which denied defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion is granted. The Clerk is directed to enter judgment accordingly.

The motion court erred when it denied defendant's motion for summary judgment where plaintiff allegedly suffered an injury to his left knee while sparring with another student in a mixed martial arts class. It is well established that the doctrine of assumption of risk generally applies where the plaintiff is injured while voluntarily participating in a sport or recreational activity, and the injury-causing event is a "known, apparent or reasonably foreseeable consequence of the participation" (Turcotte v Fell, 68 NY2d 432, 439 [1986]). The participant engaging in a sport or recreational activity "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484 [1997]). Further, the assumption of risk doctrine considers the appreciation of risk measured "against the background of the skill and experience of the particular plaintiff" (Maddox v City of New York, 66 NY2d 270, 278 [1985]).

Here, at the moment of the alleged injury, it was plaintiff's first day in the advanced mixed martial arts class where he participated in a sparring match with a "stockier" opponent. However, plaintiff had participated in sparring sessions within the beginner classes for over a month and a half. Additionally,

plaintiff's experience included service in the Israeli army between 1997 and 2000, where he fought in Lebanon. In 2002, plaintiff received 10 weeks of combat training. This training provided instruction on hand-to-hand attacks and defense against armed and unarmed attacks. Between 2005 and 2009, plaintiff was employed as an air marshal, where his training included "survival krav maga."

At the deposition, plaintiff answered questions about the application he filled out when he started taking classes with defendant. Plaintiff indicated that he wrote "yes" to prior martial arts experience and wrote a description of that experience as "survival krav maga." Further, plaintiff explained "that was the name" of the training he received as an air marshal, which he later described as "fighting."

Given plaintiff's extensive training plus his experience in mixed martial arts, he had a full appreciation of the risks involved in fighting, punching, kicking and grappling during the mixed martial arts sparring sessions. While the dissent asserts that the trainer's assurances concealed or heightened the risk of injury here, it is important to note that plaintiff was exposed to the same risk of injury when he fought the "tall thin" student as well as the "stockier" student, i.e., before any alleged assurances were made. Plaintiff already lost a sparring match to the tall thin student in the advanced class. Then, he had an opportunity to observe the stockier student before entering the cage. His statements to the trainer noting the size difference between himself and the "stockier" opponent demonstrated his appreciation of the risk before sparring. Moreover, even though plaintiff asserts that the take down that allegedly caused his knee injury was an advanced maneuver, take downs were a reasonably foreseeable consequence of participating in the mixed martial arts sparring session (*see e.g. Edelson v Uniondale Union Free School Dist.*, 219 AD2d 614 [2d Dept 1995]). Concur—Friedman, J.P., Richter, Gische and Clark, JJ.

Feinman, J., dissents in a memorandum as follows: I respectfully dissent, because, in my view, the motion court, having identified a triable issue of material fact, properly denied defendant's summary judgment motion.

Plaintiff enrolled in beginner classes at defendant's martial arts academy in January 2010. Defendant's employee, Steve Williams, instructed plaintiff's classes, which included sparring sessions between students. In March 2010, Williams suggested that plaintiff try an advanced class. When plaintiff asked Williams if he would appropriately "fit there," Williams told him that he "shouldn't be worried. You'd be okay there."

On March 11, 2010, plaintiff attended his first advanced class, which Williams also instructed. During the class, plaintiff first sparred with a "tall thin guy" and lost. A "stocky guy" then sparred with the thin guy and won. Williams then instructed plaintiff to spar with the "stocky guy." Because the stocky guy looked "tougher," plaintiff told Williams, "It doesn't look like a match." Williams replied, "Don't worry about it" and "I got your back. He knows what he's doing. He's got the skills, the techniques to control himself." Plaintiff then proceeded to spar with the "stocky guy." According to plaintiff, the "stocky guy" used an unfamiliar, advanced maneuver to force plaintiff to the floor. Due to his resulting injuries, plaintiff underwent two knee surgeries.

As the majority notes, plaintiff had received some martial arts training while serving in the Israeli army from 1997 through 2000. He also received training in defense against armed and unarmed attacks in 2002, prior to working as an air marshal from 2005 through 2009. However, plaintiff never received formal martial arts training. In addition, I cannot find sufficient support in the record for defendant's assertion, adopted by the majority, that plaintiff participated in survival krav maga. Indeed, he testified at his deposition to the contrary.

"Q: Have you ever heard of krav maga?

"A: Yes. It's an Israeli martial arts.

"Q: Did you ever participate in krav maga either here or in Israel?

"A: No."
While he also testified that krav maga was "talked about" as part of his air marshal training, he explained that the training was called "fighting" and it was defendant's employee Sean who labeled it krav maga.

"Q: So, when you wrote 'survival krav maga,' is that what the training for air martial[sic] is called, or is survival krav maga something similar to the training?

"A: We call it 'fighting,' but that's the closest name that Sean would recognize, krav maga. Again, I didn't fill this form [out] by myself."
This disputed detail, although not outcome dispositive, is, of course, relevant to evaluation of the assumption of risk doctrine as it applies to this plaintiff's experience.

The motion court denied defendant's motion for summary judgment, finding that plaintiff, in opposition to defendant's motion, raised questions of fact as to whether plaintiff assumed the risk of injury through his participation in the advanced

class. Specifically, the motion court found that questions of fact existed as to (1) whether the risk of injury to which plaintiff would be exposed by participating in the advanced class was known, apparent, or reasonably foreseeable; and (2) whether defendant exercised reasonable care to protect plaintiff from unassumed, concealed, or unreasonably increased risks.

"Summary judgment is a drastic remedy, to be granted only where the moving party . . . demonstrate[s] the absence of any material issues of fact" and where, "upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]; *see also Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492-493 [1st Dept 2012]). On a summary judgment motion, the court should draw all reasonable inferences in favor of the nonmoving party (*Vega*, 18 NY3d at 503).

A plaintiff who voluntarily participates in an athletic event assumes the risk of "injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" (*Turcotte v Fell*, 68 NY2d 432, 439 [1986]). Conversely, sport participants do *not* assume "concealed or unreasonably increased risks," and defendants have a duty to exercise care to eliminate these risks (*Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 658 [1989]). A plaintiff's awareness of a risk should be assessed against the background of the skill and experience of the particular plaintiff (*Maddox v City of New York*, 66 NY2d 270, 278 [1985]). In all, "the assumption of risk to be implied from participation in a sport with awareness of the risk is generally a question of fact for a jury" (*id.* at 279).

A defendant's motion for summary judgment based on assumption of risk should be denied if there are questions of fact as to whether the defendant concealed or unreasonably heightened the risk of harm beyond that usually inherent in the sport (*see Myers v Friends of Shenendehowa Crew, Inc.*, 31 AD3d 853, 854-855 [3d Dept 2006] [issue of fact as to whether the defendant unreasonably heightened the risk inherent in rowing by telling the plaintiff to "(k)eep working" after she felt faint]; *Swan v City of New York*, 272 AD2d 394 [2d Dept 2000] [basketball player could not have assumed the risk of injury as a matter of law because the hole in which he tripped was concealed by growing vegetation]).

*Irish v Deep Hollow* (251 AD2d 293 [2d Dept 1998]) is substantially on all fours with the present case. In *Irish*, the plaintiff, a novice horseback rider, participated in a horseback riding session offered by the defendant. When the plaintiff

expressed her concern about participating in the session because she was inexperienced, the guide assured her that there would be no problem because the horses would be kept to a walking pace. Although the ride started at a walking pace, the guide caused the pace to be increased to a canter, at which time the plaintiff fell and sustained injury. The Second Department reversed the motion court's grant of summary judgment to the defendant, and held that "a question of fact [existed] as to whether the plaintiff assumed the increased risk of riding on a horse at a cantering pace *after being told* that the horse would only travel at a walking pace" (*id.* at 294 [emphasis added]).

Here, as in *Irish*, triable issues of fact exist as to whether plaintiff assumed the risk of injury by participation in an advanced take-down maneuver after being told by his instructor that the sparring session lacked such a risk. Similar to *Myers* and *Swan*, a triable issue of material fact exists as to whether defendant's conduct, including Williams's assurances, concealed or unreasonably heightened the risk of injury inherent in the sport of martial arts.

Defendant argues that summary judgment should be granted because the risk of injury from participating in a martial arts sparring session was "perfectly obvious" to plaintiff. It cannot be said, as a matter of law, that the risk of injury by an advanced take-down maneuver was "perfectly obvious" to plaintiff mere seconds after his instructor assured him that he would protect him, the opponent would "control himself," and plaintiff should not "worry about it."

In concluding that plaintiff appreciated the risk of sparring, the majority cites plaintiff's prior sparring with the thin student, observing the "stocky" student's fight, and commenting on the size difference between the stocky student and himself. While these events do tend to show plaintiff's appreciation of the risk of injury, he did not *accept* that level of risk at that time. He expressed his concern about the "match" with that opponent and only accepted the risk of sparring with him once the instructor had reassured him. Just as in *Irish*, the amount of risk we may conclude as a matter of law that plaintiff actually assumed was reduced by these assurances.

The majority further concludes that, while the take-down executed here may have been an advanced maneuver, take-downs in general are reasonably foreseeable consequences of sparring. However, this sort of categorical approach is not consistent with "unreasonably increased or concealed" risk jurisprudence (*Benitez* at 658 [internal quotation marks omitted]). For example, in *Irish*, the Court found that the plaintiff assumed the risk of

injury from falling off a horse that was only walking, as her instructor assured her it would; she did not, as a matter of law, assume the risk of injury from falling off a horse that was cantering. Here, plaintiff assumed the risk of sparring with an opponent who would use "the skills, the techniques to control himself," not one using an advanced take-down maneuver.

Additionally, the majority's reliance on *Edelson v Uniondale Union Free School Dist.* (219 AD2d 614 [2d Dept 1995]) is misplaced. The plaintiff in that case, a high school senior with three years of wrestling experience, was injured in a wrestling match against an opponent who was in a higher weight classification than the plaintiff. Unlike in this case, the *Edelson* plaintiff was informed prior to the match that he would be wrestling an opponent in a higher weight class and was never assured that he would be protected or that his opponent would "control himself." The Court determined that the defendant had not unreasonably increased or concealed the plaintiff's risk of injury merely by matching him with a heavier wrestler. Here, we address a different question: whether defendant's *assurances* concealed or unreasonably heightened the risk of injury in a martial arts match with a more advanced opponent, such that the risk was not assumed by plaintiff. This, as correctly found by the motion court, is a factual question for the jury (*see Irish*, 251 AD2d at 294).

Accordingly, I would affirm the order of the motion court. **[Prior Case History: 2012 NY Slip Op 32132(U).]**