*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 11, 2014                518638
_____

ANDREA J. HOPE,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

HOLIDAY MOUNTAIN CORPORATION
    et al.,
                    Appellants.
_____

Calendar Date:  October 16, 2014

Before:  Lahtinen, J.P., Garry, Egan Jr., Lynch and Devine, JJ.

_____

        Roemer Wallens Gold & Mineaux, LLP, Albany (Matthew J. Kelly of counsel), for appellants.

        Law Office of Jeffrey S. Altbach, Ferndale (Mark P. Cambareri of counsel), for respondent.

_____

Egan Jr., J.

        Appeal from an order of the Supreme Court (Schick, J.), entered December 9, 2013 in Sullivan County, which denied defendants' motion for summary judgment dismissing the complaint.

        At all times relevant, plaintiff was employed as a teacher's assistant at the Center for Discovery in Sullivan County.  The Center houses, educates and assists developmentally challenged individuals, and plaintiff's job duties included "act[ing] as a one-on-one aide to a student/resident" during recreational field trips.  In August 2008, plaintiff was part of a group of approximately 12 Center staff members and students who traveled to Holiday Mountain Ski & Fun Park, a facility owned and operated by defendants in Sullivan County.  The park offered a

variety of recreational activities, including go-carts, bumper boats, a rock wall and, as pertinent here, a large slide.

While at the park, plaintiff was assigned to supervise a 16- or 17-year-old developmentally disabled young woman (hereinafter the student). After participating in various other activities, plaintiff and the student went to the park's "Fun Slide," a large, three-lane slide upon which participants climb numerous steps to the top thereof and then descend using burlap bags. When plaintiff and the student reached the bottom of the slide, plaintiff attempted to help the student get up and safely exit the area, at which point plaintiff allegedly was struck by a young boy who had come "flying down the slide" behind them. As a result of this collision, plaintiff purportedly fell to the ground and, in so doing, fractured her left wrist.

Plaintiff thereafter commenced this negligence action against defendants, alleging that they failed to maintain a safe distance between patrons using the Fun Slide in order to avoid collisions at the termination thereof. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint, contending that plaintiff's action was barred by the doctrine of primary assumption of the risk. Supreme Court denied defendants' motion, and this appeal by defendants ensued.

"Under the doctrine of primary assumption of the risk, by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally, and flow from such participation. If the risks of the activity are fully comprehended or perfectly obvious, the plaintiff has consented to them and the defendant has performed its duty. However, a plaintiff will not be deemed to have assumed the risks of reckless or intentional conduct, or concealed or unreasonably increased risks" (Fenty v Seven Meadows Farms, Inc., 108 AD3d 588, 588 [2013] [citations omitted]; see Custodi v Town of Amherst, 20 NY3d 83, 88 [2012]; Morgan v State of New York, 90 NY2d 471, 484-485 [1997]; Layden v Plante, 101 AD3d 1540, 1540-1541 [2012]). "Awareness of the risk of engaging in a particular activity is to be assessed against the background of the skill

and experience of the particular plaintiff" (DiBenedetto v Town Sports Intl., LLC, 118 AD3d 663, 663-664 [2014] [internal quotation marks and citation omitted]; see Morgan v State of New York, 90 NY2d at 486), and application of the doctrine generally presents a question of fact for a jury to resolve (see Layden v Plante, 101 AD3d at 1541).

The crux of defendants' argument on appeal is that plaintiff, in violation of posted signs warning her to remain in her own lane when exiting the Fun Slide,[1] crossed into another patron's lane and, in so doing, voluntarily assumed the known and obvious risk of being struck by someone else descending the slide; hence, defendants' motion for summary judgment should have been granted. The flaw in defendants' argument on this point is that it ignores the factual dispute as to the manner in which plaintiff's accident occurred and, more to the point, fails to address the issue of whether the park's staffing and operation of the Fun Slide on the day in question unreasonably increased the risk posed to plaintiff. As the record contains numerous questions of fact that cannot be resolved at this juncture, defendants' motion for summary judgment dismissing the complaint was properly denied.[2]

With respect to the accident itself, plaintiff testified that after she and the student ascended the stairs to the top of

---

[1] Although the record contains a photograph of a sign warning Fun Slide patrons, "When Getting Off Slide Stay In Your Lane," and the park's manager testified that this sign was in place on the day of plaintiff's accident, plaintiff denied seeing this or any other warning/safety sign.

[2] To the extent that Supreme Court questioned whether the doctrine of primary assumption of the risk could apply where, as here, the injured plaintiff was acting in the course of her employment at the time that the accident occurred, we note that the record is not sufficiently developed to permit consideration of whether plaintiff was operating under an "inherent compulsion" (Benitez v New York City Bd. of Educ., 73 NY2d 650, 658-659 [1989]) at the time she was injured.

the slide, they retrieved their respective bags and sat down. According to plaintiff, as one sits at the top of the slide looking down, the student sat in the middle of the three available lanes, while plaintiff sat in the lane to the student's left and the lane to the far right remained empty. Upon reaching the end of the slide, plaintiff stood up and moved to the adjacent middle lane to assist the student, who was sitting at the bottom of the slide "giggling." In the process of doing so, plaintiff testified, she was struck by a young boy "who came flying down the slide . . . [i]n the middle [lane]," i.e., the same lane in which the student had just descended, causing her to fall to the ground. The attendant assigned to the Fun Slide on the day of the accident, however, could not recall with any degree of certainty which lane(s) plaintiff, the student or the young boy used in descending the slide and testified that plaintiff was injured when she tripped over the young boy at the base of the slide while "coming forward . . . to help her patient." This conflicting testimony creates a question of fact as to plaintiff's position on the slide relative to both the student and the young boy, as well as the manner in which she was injured, thereby precluding an award of summary judgment (see generally Ortman v Logsdon, 121 AD3d 1388, 1389-1390 [2014]).

Moreover, even accepting that the risk of colliding with another patron is a risk inherent in the use of the Fun Slide (cf. Mussara v Mega Funworks, Inc., 100 AD3d 185, 192 [2012]; Zachary G. v Young Israel of Woodmere, 95 AD3d 946, 947 [2012], lv denied 20 NY3d 857 [2013]), the record nonetheless contains a question of fact as to whether the park's employees unreasonably heightened the risk of a collision at the base of the slide by failing to adequately staff or supervise the Fun Slide on the day in question. The park's manager testified that park rules required the attendant assigned to the Fun Slide to be stationed at the bottom of the slide, which is where the attendant was positioned at the time of plaintiff's accident. The manager further testified, however, that a second attendant would be stationed at the top of the slide on days when patron traffic was heavy or if "disabled children" were in attendance. In this regard, although the manager stated that attendance at the park was "dead" on the day of plaintiff's accident, the Fun Slide attendant testified that traffic on the slide that day was

"moderate [to] heavy."  Similarly, while the manager denied knowing that a group from the Center would be at the park on the day in question, he acknowledged that groups from the Center and other organizations serving developmentally challenged clients were at the park "every day of the week."  Additionally, the manager's testimony demonstrated that he was aware of both the potential need for a Center staff member to assist a student in exiting the slide and the possibility of a collision, stating, "We always let them help their clients, but we make them stand in front [of the slide] on the green carpet [located at the end of the slide] . . . because you never know if somebody else is going to come down behind them."[3]  Finally, the record contains conflicting testimony as to whether Fun Slide patrons could obtain their burlap bags and proceed to the top of the slide before other participants had completed their run and safely exited the area at the bottom of the slide[4] and, further, whether the attendant was adequately supervising the Fun Slide patrons prior to plaintiff's accident (cf. Huneau v Maple Ski Ridge, Inc., 17 AD3d 848, 849 [2005]; compare Youmans v Maple Ski Ridge, Inc., 53 AD3d 957, 959-960 [2008]).  In light of the foregoing, defendants' motion for summary judgment dismissing the complaint was properly denied (see generally Schmidt v Massapequa High

---

[3]  Indeed, when asked what plaintiff was doing at the base of the slide at the time of the accident, the Fun Slide attendant stated, "She kind of was doing my job where we go over and make sure they get up and we take their sack."

[4]  The park's manager testified, "Well, the rule is that there [are three] bags, [three] lanes.  [The attendant] gives [the patrons] the bag at the gate, they go to the top.  No one else can go to the top until they come to the bottom, those [three] people come down to get the bag."  Plaintiff, however, testified that the bags were at the top of the slide, and the attendant testified that the young boy who allegedly collided with plaintiff ascended the slide "like a minute" after plaintiff and her student had done so.  Such testimony raises a question of fact as to whether there was a violation of established procedures that, in turn, unreasonably increased the risk posed to plaintiff.

School, 83 AD3d 1039, 1039-1040 [2011]).

Lahtinen, J.P., Garry, Lynch and Devine, JJ., concur.


ORDERED that the order is affirmed, with costs.




ENTER:

Robert D. Mayberger
Clerk of the Court