■ RHONDA WEINBERGER, Appellant, v SOLOMON SCHECHTER SCHOOL OF WESTCHESTER, Respondent. [961 NYS2d 178]—

In an action to recover damages for personal injuries, etc., the plaintiff appeals from (1) a judgment of the Supreme Court, Rockland County (Walsh II, J.), dated May 10, 2010, which, upon a jury verdict finding the defendant not at fault in the happening of the accident, is in favor of the defendant and against her on the issue of liability, dismissing the complaint, and (2) an order of the same court dated September 22, 1010, which denied her motion pursuant to CPLR 4404 to set aside the verdict on the issue of liability and for a new trial.

Ordered that the judgment is reversed, on the law, the complaint is reinstated, and the matter is remitted to the Supreme Court, Rockland County, for a new trial; and it is further,

Ordered that the appeal from the order is dismissed as academic in light of our determination on the appeal from the judgment; and it is further,

Ordered that one bill of costs is awarded to the appellant.

On May 12, 2008, the plaintiff's daughter (hereinafter S.) was injured while participating in junior varsity softball team batting practice for her high school, the defendant, Solomon Schechter School of Westchester (hereinafter the School), under the direct supervision of her coach, Linda Pisano, on the

School's grounds. At the time of the incident, S., then 14 years old, was a freshman at the School. This was S.'s first season with the School's team. However, she had previously played for two years in the New City Softball League.

The plaintiff, as mother and natural guardian of S., and individually, commenced this action against the School and Pisano, inter alia, to recover damages for personal injuries. The plaintiff discontinued the action against Pisano and the case proceeded to a jury trial against only the School on the issue of liability.

The testimony at trial established that, on the date of the accident, Pisano instructed the team to perform a new drill for batting practice called the "rapid fire drill." During the rapid fire drill, the pitcher was required to be closer to home plate than the pitching mound in order to throw a quick succession of pitches.

The testimony also demonstrated that Pisano elected to use an "L-screen" during batting practice during the rapid fire drill. Regulations promulgated by the National Softball Association required protective pitching screens, such as the subject L-screen, to be freestanding. It was undisputed that the L-screen was not freestanding but, rather, was propped up between two benches and fell down several times during the batting practice.

Near the end of batting practice, the L-screen fell again while S. was pitching. According to Pisano's deposition testimony, which was read to the jury on the plaintiff's case-in-chief, S. then asked Pisano if she could continue to pitch, to which she responded "are you okay with pitching?" Pisano testified that she did not get a response but did not direct anyone to put the screen back up. She did advise S. to move a step over before pitching to the last batter because she was left handed. Pisano acknowledged that S. was pitching from in front of the mound and "not on the mud, because it was all mud [on] the mound."

Two of the other players testified that Pisano advised S. to leave the L-Screen on the ground. S. testified that, after consulting with Pisano, she left the L-screen on the ground and threw another pitch, which was hit back at her, striking her in the face.

The School's athletic director testified that, at the time of the accident, the rubber on the pitcher's mound for the School's softball field was situated 40 feet away from home plate in accordance with the rules of the National Federation of State High School Associations. The rubber was in the center of the mound which measured 12 feet in diameter and consisted of a clay/dirt mixture. Six feet from the pitching rubber there was grass in all directions.

The athletic director testified that he instructed his softball coaches that an L-screen would be required during softball practice at the School if the students were pitching batting practice at a shorter distance to home plate than the mound. He stated that he told the coaches that the L-screen was to be to set up approximately 25 to 30 feet in front of home plate with the pitcher pitching from approximately 5 to 7 feet behind the L-screen. He stated that the L-screen did not have to be used when pitchers threw batting practice from the mound. He also testified that Pisano told him that S. was pitching from approximately six feet in front of the pitching rubber when the accident occurred.

At the charge conference, the plaintiff objected to the use of an amended version of PJI 2:55, which concerns implied assumption of risk, as a means to instruct the jury about the theory of primary assumption of risk. The plaintiff contended that the amended charge was improper, since whether the theory of the primary assumption of risk applied was an issue of law for the trial court to decide and not an issue of fact to submit to the jury. The plaintiff objected to the interrogatories posed to the jury on the verdict sheet on the same basis. The Supreme Court rejected the plaintiff's alternative proposed jury instructions.

The jury returned a verdict finding the School not at fault in the happening of the accident on the ground that S. voluntarily assumed the risk of injury involved in the batting practice. In a judgment dated May 10, 2010, the Supreme Court dismissed the complaint.

Thereafter, the plaintiff moved pursuant to CPLR 4404 to set aside the verdict on the issue of liability and for a new trial on the basis that the Supreme Court improperly charged the jury with respect to assumption of risk. In an order dated September 22, 2010, the Supreme Court denied the plaintiff's motion. The plaintiff appeals from the judgment and the order.

Pursuant to the doctrine of primary assumption of risk, a voluntary participant in a sporting or recreational activity " 'consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation' " (*Alqurashi v Party of Four, Inc.*, 89 AD3d 1047, 1047 [2011], quoting *Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *see Custodi v Town of Amherst*, 20 NY3d 83 [2012]; *Bukowski v Clarkson Univ.*, 19 NY3d 353, 356 [2012]; *Hae Seng Kim v Flushing YMCA*, 64 AD3d 679 [2009]). The doctrine operates to limit the scope of the defendant's duty, and "it has been described a 'principle of no duty' rather than an absolute defense based upon a plaintiff's

culpable conduct" (*Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010], quoting *Morgan v State of New York*, 90 NY2d at 485; *see Turcotte v Fell*, 68 NY2d 432, 438-439 [1986]; *Anand v Kapoor*, 61 AD3d 787, 790 [2009], *affd* 15 NY3d 946 [2010]). "If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty" (*Turcotte v Fell*, 68 NY2d at 439). "By voluntarily participating in a sporting or recreational activity, the plaintiff is deemed to have consented, in advance, ' "to relieve the defendant of an obligation of conduct toward him [or her], and to take his [or her] chances of injury from a known risk arising from what the defendant is to do or leave undone" ' " (*Anand v Kapoor*, 61 AD3d at 790, quoting *Turcotte v Fell*, 68 NY2d at 438). This is a question of law for the trial court to determine (*see e.g. Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *Anand v Kapoor*, 61 AD3d at 792).

However, the primary assumption of risk doctrine does not serve as a bar to liability if the risk is unassumed, concealed, or unreasonably increased (*see Custodi v Town of Amherst*, 20 NY3d 83 [2012]; *Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 654 [1989]; *Viola v Carmel Cent. School Dist.*, 95 AD3d 1206, 1207 [2012]; *Alqurashi v Party of Four, Inc.*, 89 AD3d at 1047-1048; *Balone v New York State Amateur Softball Assn., Inc.*, 71 AD3d 710 [2010]). " '[A]wareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff' " (*Morgan v State of New York*, 90 NY2d at 486, quoting *Maddox v City of New York*, 66 NY2d 270, 278 [1985]; *see Toro v New York Racing Assn., Inc.*, 95 AD3d 999, 1000 [2012]; *Calouri v County of Suffolk*, 43 AD3d 456 [2007]). Furthermore, "in assessing whether a defendant has violated a duty of care within the genre of tort-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants' negligence are 'unique and created a dangerous condition over and above the usual dangers that are inherent in the sport' " (*Morgan v State of New York*, 90 NY2d at 485, quoting *Owen v R.J.S. Safety Equip.*, 79 NY2d 967, 970 [1992]).

Here, the Supreme Court improperly submitted to the jury the question of whether to apply the doctrine of primary assumption of risk. Under the circumstances of this case, as a matter of law, the doctrine of primary assumption of risk is not applicable and does not operate to bar the plaintiff's recovery. S., a high school freshman with limited pitching experience as a member of the School's team, cannot be said to have assumed

the risk of being hit in the face by a line drive while pitching behind an L-screen, which, due to a defect, was not freestanding and had fallen down prior to the pitch that led to her injuries. In addition, it cannot be said that S. assumed that risk, when she was specifically instructed by her coach to pitch, without the benefit of the L-screen, closer to home plate than is the standard distance for pitching in the sport of softball. The evidence demonstrated that the School's athletic director required L-screens to be used during softball practice when the pitcher was pitching at a distance of anywhere from 30 to 37 feet from home plate. According to the School's athletic director, Pisano informed him that S. was pitching at a distance of approximately 34 feet from home plate.

The faulty equipment provided by the School and the decreased distance between S. and the batter, from which she was pitching at the direction of Pisano without the benefit of the L-screen, did not represent risks that were inherent in the sport of softball and, instead, enhanced the risk of being struck by a line drive (*see Morgan v State of New York*, 90 NY2d at 488-489; *Owen v R.J.S. Safety Equip.*, 79 NY2d at 970; *DeMasi v Rogers*, 34 AD3d 720, 721-722 [2006]; *cf. Bukowski v Clarkson Univ.*, 19 NY3d at 357). Thus, the Supreme Court improperly charged the jury with an amended version of PJI 2:55 instructing them on the doctrine of primary assumption of risk.

However, the evidence at trial presented an issue of fact as to whether the recovery of damages by the plaintiff should have been limited by S.'s culpable conduct in impliedly assuming the risk of pitching closer to home plate in the absence of a functional L-screen (*see* CPLR 1411). Thus, the jury should have been charged with the unamended version of PJI 2:55, as it addresses the triable issue of implied assumption of risk, as well as PJI 2:36, which addresses comparative negligence.

Accordingly, the judgment must be reversed and the matter remitted to the Supreme Court, Rockland County, for a new trial.

In light of our determination, the appeal from the order denying the plaintiff's motion pursuant to CPLR 4404 to set aside the verdict and for a new trial has been rendered academic, and we need not reach the plaintiff's remaining contention. Skelos, J.P., Dickerson, Austin and Miller, JJ., concur.